CASE 57—SPECIAL PROCEEDING—MAY 27.

# Commonwealth of Kentucky v. The E. H. Taylor Jr. Co.

### APPEAL FROM FRANKLIN CIRCUIT COURT.

**1.** TAXATION—ASSESSMENT OF DISTILLED SPIRITS—CONTITUTIONAL
LAW.—The act of November 18, 1892, (secs. 4105-4114, Ky. Stat.),
providing for the assessment of distilled spirits is not in viola-
tion of section 3, of the Bill of Rights, which declares that,
"no grant of exclusive separate public emoluments or privileges

101   325
f102 430

101   325
104   738

101   325
f107  188

101   325
e118  387

101   325
121   599
123    56
123   303

101   325
f127  700

shall be made to any man or set of men, except in consideration of public services." That act prohibits no one from entering into this lawful business; it grants no exclusive privileges; it gives no emoluments, and releases no one from his part of the burden of supporting the state government, and. is no denial of equal privileges.

2. SAME.—There is nothing in the act which conflicts with the provision of section 174, of the Constitution, that "all property whether owned by natural persons or corporations shall be taxed in proportion to its value, unless exempted by the Constitution."

3. SAME.—The provisions of the Kentucky Constitution do not prohibit, expressly or by implication, the assessment of property for taxation by any other person than the assessor elected in the county.

4. SAME.—The act in question is not a special local law within the meaning of section 59, of the Constitution, but is general in purpose and detail, and effective in securing the revenue which it seeks to collect.

W. H. JULIAN FOR APPELLANT.

1. No other tax payer or set of tax payers than those embraced by this act are allowed three years within which to pay their State, county, and municipal taxes, and it is therefore in violation of section 3, of the Bill of Rights, in reference to the granting of exclusive privileges. Kentucky Trust Co. v. Lewis, 82 Ky., 579.

2. Under the provisions of section 174, of the Constitution, all property shall be taxed in proportion to its value; the burden of taxation upon the owners of distilled spirits under this act, who are not required to pay their taxes on same for several years, is less than upon the owners of other kinds of property who are required to pay theirs annually, and the legislature can not by indirection avoid the force of that section any more than they can do so directly. Lancaster v. Clayton, &c., 86 Ky., 374.

3. Under the provisions of section 171, of the Constitution, the rate of the levy, the mode of the assessment, and the manner of collecting the taxes within the territorial limits of the authority levying the taxes must be the same. 3d Ohio State, Rept., 15.

4. The act is a special law or a local law within the meaning of section 59, General Statutes. Sullivan on Statutory Construc-

Commonwealth of Kentucky v. The E. H. Taylor Jr. Co.

tion, sec. 121; 55 Cal., 550; 51 N. J. Law., 155; 15 Nevada, 248; 16 Nevada, 440.

L. F. JOHNSON AND IRA JULIAN OF COUNSEL ON SAME SIDE.

JOHN B. LINDSEY FOR APPELLEE.

1. The authorities cited by counsel for appellant are reviewed and criticised, and shown to be inapplicable.
2. The statute is general and uniform in its operation when it operates equally on all persons who are brought within the relations and circumstances provided for by it. Amer. & Eng. Enc. of Law, vol. 3, pp. 695-8; Desty on Taxation, vol. 1, p. 180-1.
3. There is no provision in the Constitution of Kentucky fixing the person by whom an ad valorem assessment shall be made.
4. Perfect uniformity and equality of taxation can not be attained, but when all persons under the same circumstances are treated alike, then equality and uniformity are attained in the sense intended by the statute.
5. Doubt as to the constitutionality of a law will always be resolved in favor of its validity. Amer. & Eng. Enc. of Law, vol. 3, pp. 673-4; 9 Dana, 513; 2 B. M., 178; 10 Bush, 613; 11 Bush, 74.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

In May, 1894, the Commonwealth of Kentucky, on relation of R. D. Armstrong, sheriff of Franklin county, filed the following statement of property omitted by the assessor: "To the County Clerk of Franklin county: The following property, belonging to and in the possession of the E. H. Taylor, Jr. Co., was omitted by the assessor for the years 1892 and 1893, viz.: 27,420 barrels of whisky in bonded warehouses that should have been listed by the assessor as of the 15th day of November, 1892, and 29,440 barrels of whisky in bonded warehouses that should have been listed by the assessor as of September 15, 1893, valued at $11 per barrel," and process issued summoning the E. H. Taylor, Jr. Co. to

show cause why that company should not be assessed for taxation on this whisky at the valuation of $11 per barrel.

Thereupon the E. H. Taylor, Jr. Co. filed response, admitting that it was the owner of a distillery bonded warehouse in Franklin county, Ky., in which distilled spirits were stored on the assessment dates referred to; that the whisky referred to in the information was all the whisky stored in that warehouse on the respective dates, that, as required by the general revenue laws of Kentucky (chapter 105 of the Acts of 1892), the respondent did in 1892, between November 15th and December 1st, make reports to the auditor of public accounts in writing, sworn to by its proper officers, which reports showed the quantity and kind of spirits in the bonded warehouses referred to respectively on November 15, 1892, and September 15, 1893, the dates when made, the serial number of the packages in which it is, and was contained, the county and tax district in which the warehouses were situated; that at the dates named none of the United States government taxes had been paid thereon, the dates of the expiration of the bonded period, and the fair cash value of the spirits estimated at the price that the whisky would have brought at a fair voluntary sale; that the aggregate of barrels, or packages, was on November 15, 1892, 27,420, and on September 15, 1893, 29,444; that said reports were by the auditor of public accounts submitted to the State Board of Valuation and Assessment, and in due time for each of said years that board had fixed the value of the whisky for the purpose of taxation, as required of them by law, the valuation being $11 per barrel, its fair cash value, and that immediately after fixing the value the State Board of Valuation and Assess-

ment had certified to the auditor of public accounts the
values of whisky assessed for taxation, and that this amount,
on such valuation, was certified to the county clerk of
Franklin county as the amount assessed and liable for county
and district taxation, and was by the clerk certified to appel-
lant, Armstrong, the sheriff of Franklin county, for collec-
tion, and that he has been, and is continuing to collect taxes
under that assessment as they respectively fall due; that the
assessment made by the board of valuation and assessment
was final; that the sheriff was not authorized to have listed
for taxation any property unless same had been omitted to
be listed and assessed by the board, and the effort to have
this whisky again assessed was without legal authority.
To this response appellant filed a demurrer, which, upon
hearing, the county court sustained, and defendant failing
to plead further, judgment was rendered ordering the prop-
erty to be listed for taxation and rendering judgment against
appellees for costs.

Appellees, the E. H. Taylor, Jr. Co., appealed to the circuit
court, and upon trial there the judgment of the county
court was reversed and judgment rendered against appellant
Armstrong for costs, and dismissing the proceedings.   From
that judgment Armstrong appeals to this court, and asks a
reversal of the judgment of the circuit court.

The question before this court upon this appeal is whether
this property is subject to an assessment by the county court
after a previous assessment had been made by the State
Board of Valuation and Assessment.   This is contingent
upon the question of the constitutionality of the act of
November 18, 1892, providing for the assessment of distilled

spirits, and is embraced in article 5 in the chapter on revenue and taxation, Kentucky Statutes, beginning with section 4105 and ending with section 4114, inclusive.

An examination of this statute discloses the fact that this species of property occupies a unique position in its relations to other property and to the revenue laws of this State. This is due to the fact that whisky and all alcoholic liquors were, and have been for many years, one of the chief resources of revenue for the support of the United States government, as there is assessed and levied upon each gallon of whisky produced in the United States an enormous specific tax, amounting to more than five times the intrinsic value of the article itself at the date of its manufacture; and, in order to secure the payment of its revenues from this source, the United States government has long exercised the most absolute power and surveillance over the manufacture, sale and handling of this peculiar commodity. All distilleries in which it is made are required to be registered and are in the absolute control of the federal government, through its officers. The whisky is transported from the distilleries, where it is made, to sealed and locked cisterns in sealed and locked rooms, which are controlled by the officers of the federal government; the whisky is taken from these cisterns and run into packages by the federal officers, these barrels are deposited by them in bonded warehouses, which are absolutely under the control of and in the possession of the United States revenue officers, and the actual possession of these packages is held and retained by the government for the payment of the taxes due thereon. Neither the distiller himself nor any one else is permitted to enter these ware-

houses, except in the presence of the federal officers, and then only for the purpose of repairing packages or of removing them after the tax due the United States government has been fully discharged. Under the laws and regulations of the United States government this tax can not be paid by any person except the distiller, and the taxes due thereon will not be received from or the possession delivered by the government officers to any other person; but the title to the whisky in these bonded warehouses, subject to the liens of the United States government for taxes, is transferred by the delivery of "warehouse receipts," which identify the packages by reciting their serial numbers, and which are generally negotiable.

Whilst the whisky is in bonded warehouses in the custody of the United States government, its right to the possession of the property is supreme. It is not liable to any of the processes of the State courts; it can not be reached by attachment, distress warrant or execution. (Drake on Attachments, 6th edition, section 281, and Taylor v. Carryl, 24 Penn., 259), and there is no power in the State to subject it either to the demands of the State or to the claims of creditors until the lien of the government for its taxes has been fully discharged and the possession of the property surrendered to the owner. The laws authorize the payment of the taxes due the United States government at any time after its entry into the bonded warehouse until the end of the bonded period, which is eight years, and owing to the manner in which the title to the property is transferred and the uncertainty of the time when the lien of the government will be discharged and its possession surrendered to its owner,

it is almost impossible for the State officials to know when any particular package will be surrendered to its owner and be liable to process in their hands, as it would require a constant guard at each distillery bonded warehouse in order to be informed when each separate package came out of bond so that the tax might be collected thereon.

Under these circumstances the legislature, in effect, made the distillers the agents of the State to collect from the owners of the whisky the tax. Manifestly in many instances these packages do not belong to the distiller at the date of assessment, and it is impossible, in the nature of things, for him to know who may be the real owner until the time for withdrawal and the payment of the tax due the United States government, when the warehouse receipt, evidencing title, is presented. From the necessities of the case the present method of assessing and taxing this species of property has been evolved by the legislature as the best and most efficacious means of securing to the State its revenue; and it would seem to be the duty of the judicial department to sustain their action, unless the results arrived at are clearly in conflict with the fundamental law. In passing on this question it was held by this court, in 3 Met., 576, that "the duty, and sole duty, of this department of government, when the constitutional power of the legislature to enact a law is questioned, is to look to the provisions of the federal and State Constitutions, and if they do not, in express terms, or by necessary implication, forbid the exercise of such power, the enactment must be adjudged valid and enforcible as a law. Beyond the constitutional restrictions, thus to be interpreted, the only limits upon the State legislature in

enacting laws are its own wisdom, sound judgment and patriotism.    And it may be added that in doubtful cases, where it is not clear that the fundamental law has been invaded, courts rarely, if ever, interfere to arrest the operation of legislative enactments.    Respect for the wisdom of a co-ordinate department of the government, as well as sound policy, forbids such interposition, except upon clear and satisfactory grounds."

"Legislators, as well as judges, are bound to obey and support the Constitution; hence the presumption is always in favor of the constitutionality of a statute, and every reasonable doubt must be resolved in favor of the statute, not against it, and courts will not adjudge it invalid unless its violation of the Constitution is, in their judgment, clear and unmistakable."    (Black on Constitutional Law, 59).

To sustain their contention that this statute is invalid and in conflict with the organic law, four provisions of the Constitution are suggested and discussed by appellant's counsel:

1st. It is claimed that the mode of assessment provided in article 5, chapter 108, on revenue and taxation, violates section 3 of the Bill of Rights, which declares that "no grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public services."

2d. That it conflicts with section 174 of the Constitution, which provides that "all property, whether owned by natural persons or corporations, shall be taxed in proportion to its value, unless exempted by the Constitution."

3d. That it violates section 171 of the Constitution, which

provides that "taxes shall be uniform on all property in the territorial limits of the authority levying the tax."

4th. That it is a local, or special act, regulating the assessment of taxes, and conflicts with section 59 of the Constitution.

And in support of these propositions a number of authorities in Kentucky and other States are cited.

Clause 3d in the Bill of Rights was intended to prevent the exercise of some public function or of obtaining some exclusive privilege affecting the rights of the people by individuals or corporations, who have rendered no public service, but can not, in our opinion, be construed to break down the powers of the legislative department which has been appealed to for the enactment of laws creating agencies for its own support. (80 Ky., 269; 1 Dana, 233).

This act providing a special mode of assessing distilled spirits for taxation prohibits no one from entering into this lawful business; it grants no exclusive privileges; it gives no emoluments; it releases no one from his part of the burden of supporting the State government, and it is no denial of equal privileges.

Still less are we able to see how by the terms of the act the property is not taxed in proportion to its value, as required by section 174 of the Constitution. It is not claimed that the assessment of the whisky made by the State Board of Valuation and Assessment lacks uniformity with other ad valorem assessments, and the information filed by the relator of the Commonwealth against appellees herein sought to have the same assessment, $11 per barrel, put upon it that had been fixed by the State Board of Valuation and Assessment; and

it is worthy of note that the response of appellee shows that, after the State board had made its final assessment of the whisky, those assessments were certified by the auditor to the county clerk and by the clerk to the sheriff for collection, and that he has been and is collecting the county taxes under such assessment, and that none of the whisky was omitted from being listed and assessed.

Upon demurrer all these averments are taken as true; why, then, should another assessment have been had to fix an ad valorem tax on the whisky after a previous assessment had fixed upon it an exactly corresponding value to that sought to be imposed by the county court?

Section 171 of the Constitution does not prohibit the assessment of property by any other person than the assessor elected in the county. That section provides for an annual tax sufficient to defray the expenses of the State government, and that they shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax, and that all taxes shall be levied and collected by general law. Section 172 requires that all property not exempt from taxation shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale; and further provides that "any officer or other person authorized to assess values for taxation, who shall commit any willful error in the performance of his duties, shall be deemed guilty of misfeasance," clearly implying that the legislature shall have power to designate any person they choose to make the assessment. The word "taxes" in section 171 is used to show that money to carry on the government must be raised, and not that in the system of taxation was

the State to be restricted to one mode of assessing property from which this revenue must be had. In fact by section 104 of the Constitution, it is provided that the legislature may abolish the office of assessor and provide that the assessment of property shall be made by another officer.

It is argued that by section 174 it was provided that nothing in the Constitution should be construed to prevent the General Assembly from providing by taxation, based on franchises, incomes and licenses, and by another section the Constitution provides that they should not be prevented from providing how railroads should be assessed; and it is claimed that as there is no such provision as to whisky in bond it is inferable that the legislation as to the taxation of that property, no matter by whom owned or where stored, must be regarded as subject to the inhibitions of the Constitution—that *suggestio unius est exclusio alterior*—but we think that the exception named in the Constitution as to railroads was not merely with the view of providing a different assessor for the railroad property, but that it was intended to provide a different mode of assessment and valuation. Nor does the clause relating to incomes, franchises and railroads, by necessary implication, prohibit the classification of the objects of taxation, but puts the burden of supporting the government upon all the same class equally (Desty on Taxation, 179 and 470), and Cooley on Constitutional Limitations, page 165, says: "Implied restrictions resting in theory must be left to the judgment of the law makers chosen by the people."

The legislature thought that this peculiar property should be listed for taxation, not by county assessors, but by the

State Board of Valuation and Assessment; and, being govern-
ed in so acting by the ad valorem principle, and in conformi-
ity with all other property similarly circumstanced, this is
all that can be obtained. Perfect uniformity and equality
can not be obtained, and when all persons in similar circum-
stances are treated alike, then equality and uniformity are
obtained in the sense meant in the Constitution.   Practical
uniformity is reached because the property is assessed at its
fair cash value, and all persons and corporations° who hold
this class of property, under similar circumstances, are
treated alike.  As this property is held by the federal gov-
ernment to secure payment of taxes not due, the enforcement
upon it of State taxes must be unlike that upon property not
so held; and if the legislature in its discretion believed the
mode of assessment prescribed by the statute was the best
and most convenient to secure uniformity and a fair valua-
tion, we should resolve doubts as to its constitutionality in
favor of the validity of the law.  (10 Bush, 618; 9 Dana, 513

All presumptions favor the constitutionality of the act,
and where there is a reasonable doubt that it is repugnant to
the organic law, it should be upheld by the courts.   The
assessment and taxes upon the property within the territorial
limits of the authority levying them are uniform, and are
imposed as fairly, according to value by an assessment made
in the mode prescribed by the act under discussion, as they
could be by assessment made by a county assessor, and,
having been so assessed, are collected under the same general
laws regulating the revenues as the taxes imposed on other
property, except as to the time of payment, and this delay
is necessarily made to depend upon the payment of the taxes
(22)

due to the United States government upon the same property; but, to preserve uniformity, distillers are required to pay interest on the deferred taxes.

But for the purposes of this appeal, which involves alone the mode of assessment provided by the act under discussion, section 4110 might be deemed invalid, and leave the other still enforcible. The assessment provisions of this section, independent and separable from section 4110, can be executed in accordance with legislative intent, and are valid. (95 U. S., 80.)

It is most earnestly insisted as an objection to the validity of the act in question that it is a special local law, conflicting with section 59 of the Constitution, which forbids, by clause 15, any law of that character in regulating the assessment and collection of taxes. It can not be contended that this law applies alone to the appellees, or to Franklin county, or to the Seventh Congressional District. It operates upon a, multitude of property of like character owned by persons all over the State, and, in our judgment, it is neither local nor special, but general in purpose and detail, and most effective for securing to the State the revenue it seeks to collect.

Without further elaboration of the questions presented by counsel we conclude that the act in question is not in conflict with the Constitution, and the opinion heretofore rendered is withdrawn, and the judgment of the circuit court is affirmed.

Judge White dissenting.