Case 6.—ACTION BY J. H. WORTEN AGAINST THE CITY OF PADUCAH TO ENJOIN THE COLLECTION OF CERTAIN TAXES.—May 18.

## Worten v. City of Paducah.

Appeal from McCracken Circuit Court.

W. M. REID, Circuit Judge.

Judgment for Deft. Plff Appeals. Reversed.

1. Taxation—Assessment—Equality—Ky. St. 1903, §3174, declaring that the city assessor shall, in the year 1892, and every four years thereafter, make an assessment of all real property within the corporate limits, and that the assessment for each of the three subsequent years shall be fixed at the same value, and that personal property shall be assessed annually, is not because of the different methods provided for the assessment of real and personal property, in conflict with Cont. §§171, 172, providing that taxes shall be uniform, and that all property shall be assessed at its fair cash value, estimated at the price it would bring at a voluntary sale, etc.

2. Municipal Corporations—Taxation—Time for Assessment—Constitutional Provision—Construction—Const. §171, declaring that the General Assembly shall by law provide an annual tax sufficient to defray the estimated expenses of the Commonwealth for each fiscal year, etc., refers only to State taxes.

Worten v. City of Paducah.

3.  Same—Even if Const. §171, declaring that the General Assem-
bly shall provide by law an annual tax, etc., should be regard-
ed as applying to municipal taxes, yet in view of section 181,
providing that the  General Assembly shall not impose taxes
for municipal purposes, but may confer on the proper authori-
ties of a municipality power to assess and collect such taxes,
it would require only that the tax should be levied and
collected annually, and not that the property should be annu-
ally assessed.

WM. MARBLE, attorney for appellant.
GREENE & VANWINKLE of counsel.

### POINTS AND AUTHORITIES.

1.  That part of the charter of cities of the second class which re-
quires an assessment of real estate only once in four years, is con-
stitutional. (Sec. 3174, Ky. Stat. 1899, Edition; Sec. 3174 Ky.
Stat. 1903 Edition; Sec. 171, section State Constitution; Sec. 172,
section State Constitution; Black on Constitutional Law, p. 59;
Comth. v. Taylor, 101 Ky. 332-3; Johnson v. Higgins, 3 Met.
576; I Cooley on Taxation, pp. 604-5-6, 3rd Ed.)
2.  Taxes are not debts but burdens. (27 Am. & Eng. Enc.
Law, 2nd Ed., 578, 580; Cooley on Taxation, p. 15; City of Louis-
ville v. Louisville Gas Co., 15 R. 177.)
3.  The assessment, levy and collection' of taxes must conform
strictly to the statute. (Lee v. Comth. 6 Dana, 311; Ormsby v. City
of Louisville, 2 R .66; Dumesnil v. Same, 4 R. 14; City of Louis-
ville v. Louisville Public Warehouse Co., 21 R. 867; Slaughter v.
City of Louisville, 12 R. 63.)
4.  If the assessment is void tax cannot be collected. (Cooley On
Taxation 352; Burroughs On Taxation 202; Clark v. Cummings, 1 R.
419; Davidson v. Sterrett, 13 R. 266.)
5.  If the charter of the city as it was before the amendment is
the law of this case then the Assessment is void because there
was no ordinance authorizing it. (Sec. 3174, Ky. Stats. 1899
Edition; Cooley On Taxation, 3rd Ed., page 597.)

JAMES CAMPBELL, JR., City Solicitor for appellee.

1.  As will be noted Sec. 3174 Ky. Stats. providing for a
quadrennial assessment, pertains entirely to real estate, and, if
constitutional, separates  the  method  of assessing real and
personal property, the old way of assessing personal property
every year remaining in force.
2.  We submit that this discrimination makes the statute fatally
defective and unconstitutional. Uniformity of taxation is now

and always has been the recognized basis of taxation in Kentucky.

3. Taxation must be uniform on all property subject to taxation unless specially exempted by and under the terms of the Constitution. The Constitution is self executing.

4. Whenever property becomes a part of the territorial taxing district, it becomes subject to taxation under uniformity provisions of the Constitution no matter through what means or source it was acquired by the district.

### AUTHORITIES CITED.

Kentucky Stat. (1903) Sec. 3174, 3181, 3403, 2983, 3177, 3178, 3176; State Constitution, Sec. 171, 172, 174 and 181; Holtzhauer v. City of Newport, 22 S. W., 752; Gillman v. Sheboygan, 67 U. S., (2 Black) 510; Primm v. Belleville, 59th Ills., 142; Levi v. City of Louisville, 30 S. W., 973, 97 Ky. 394; Marshall v. Donovan, 10 Bush, 681; Claybrook v. Owensboro, 16th Fed. Rep., 297; Trustees v. Louisville, 30 S. W., 620; Lancaster v. Clayton, 86 Ky., 393; Briggs v. Russellville, 99 Ky., 515; Pence v. Frankfort, 101 Ky., 534; Board of Councilmen v. Scott, 101 Ky., 615; Board of Councilmen v. Rarick, 102 Ky., 352; Richmond v. Gibson, 46th S. W., 702; Latonia v. Hopkins, 47th S. W., 248; Hughes v. Carl, 50 S. W., 852; Ryan v. Central City, 54 S. W., 2; Central Covington v. Park, 56 S. W., 650; Louisville Bridge Co. v. Louisville, 58th S. W., 598; Henderson Bridge Co. v. Henderson, 173 U. S., 592; Newport v. Masonic Temple Assn., 56 S. W., 405; Shuck v. Lebanon, 53 S. W., 655; L. & N. R. R. Co. v. Barboursville, 48th S. W., 985; Louisville R. Co. v. Comth., 49th S. W., 486; Barbour v. Louisville Board of Trade, 82 Ky., 645; South Covington and C. Str. Co. v. Bellevue, 49th S. W., 23; German Natl. Bank v. Louisville, 54 S. W., 732; Schuster v. City of Louisville, (opinion rendered last term of this Court.)

OPINION BY JUDGE O'REAR—Reversing.

Paducah is a city of the second class. Respecting the assessment of property for city taxation, section 3174, Ky. St. 1903, provides: "The city assessor shall, in the year one thousand nine hundred and two, and every four years thereafter, make an assessment of all real property within the corporate limits thereof, and the assessment of the real property for each of the three years subsequent to said quadrennial assessment shall be fixed at the same values as finally

approved by the board of equalization in said quad-
rennial assessment, and shall annually make an as-
sessment of all taxable personal property within the
corporate limits thereof, and shall correct the valua-
tion of any parcel of real estate on which any new
structure of over one hundred dollars in value may
have meanwhile been erected, or on which any struc-
ture of like value shall have been destroyed, and
where transfers of real estate have been made, he
shall make the necessary changes in the names of
owners.'' Appellant's real estate in the city was as-
sessed in 1902, and its valuation finally fixed by the
board of equalization. In 1903, the city assessor
again assessed appellant's real estate (for taxation
for the year 1904) at a different and higher valua-
tion than for 1902, although no buildings had been
erected upon it, nor improvements made. Ap-
pellant seeks to enjoin the collection of the tax
based upon the last-named assessment on the
ground that the assessment was void, not having
been authorized by the statute. It may be con-
ceded that the assessment of property for taxation
is such an essential step in the matter of imposing a
legal tax upon it that, unless it is done substantially
in the manner required by the statute authorizing the
tax, the assessment will be invalid. Cooley on Taxa-
tion, 353. The circuit court held that the statute above
quoted (section 3174, Ky. St. 1903), requiring a quad-
rennial assessment of real estate and an annual as-
sessment of personal property, was in violation of the
Constitution, and, to the extent that it permitted any
other than an annual assessment of all property, it
was void. His honor cited sections 171 and 172 of the
Constitution, as the basis of his judgment. For the
convenience of their study in this connection, they are
copied below:

''Sec. 171. The General Assembly shall provide
by law an annual tax, which, with other resources,

shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year. Taxes shall be levied and collected for public purposes only. They shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by the general laws.

"Sec. 172. All property not exempted from taxation by this Constitution, shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale; and any officer, or other person authorized to assess values for taxation, who shall commit any wilful error in the performance of his duty, shall be deemed guilty of misfeasance, and upon conviction thereof shall forfeit his office, and be otherwise punished, as may be provided by law."

It was held by the circuit court, and is argued by appellee, that a tax imposed upon a quadrennial valuation of real property and an annual valuation of personal property would not "be uniform upon all property subject to taxation." This position is fortified, it is contended, by the expression in section 172 of the Constitution that all property shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale. It seems to be assumed that uniformity of method of assessment is required by the sections quoted, as well as uniformity of taxation; or, at least, that the latter includes necessarily the former, and would be violated if the former did not exist. If the methods of assessment of different species of property were such as that it resulted that one species was taxed upon its fair cash value, and the other was not, undoubtedly the taxation would not be uniform, and the scheme would violate the Constitution. On the other hand, it is scarcely to be thought that exact equality is meant by uniformity of taxation. Noth-

ing is better settled than that such result is unattainable as a practical matter, and is wholly Utopian. If the result is that approximate equality is attained in the imposition of the public burdens of taxation, all that can be hoped for, and all that is required is accomplished. From the very nature of the subject, presenting a great number of matters, many of them complex, for treatment, the manner of assessment of property, including time of assessment, and officers by whom to be assessed, must be adjusted so that different species of property may be got at, each in the way most likely to produce that uniformity of burden aimed at by the Constitution, yet so as to not unnecessarily do injury to its owner, or the business in which it may be employed. Thus, for example, we have property generally assessed by county assessors. Railroads, however, are assessed by the railroad commissioners. Corporations are assessed upon their capital and intangible property, by the State board of assessment and valuations. Distilled spirits are also assessed by this board. Omitted property is assessed by the county courts, or the State board of assessments. Nor are they all required to be assessed at the same time, nor as of the same date. Yet, all these assessing officers act under that primal law of taxation that the tax shall be uniform. We thus see that the Legislature has from the beginning regarded the section of the Constitution concerning uniformity of taxation not to require a uniform system of assessment, nor a uniform time of assessment of all taxable property. The argument runs, though, that as the value of real estate may greatly fluctuate within four years, independent of improvements erected or destroyed, a provision for quadrennial assessment leaves room for great disparity between its actual cash value on a given date, and its assessed value, which may have been its actual cash value then, three years prior when assessed; that the result might be,

and in many cases necessarily would be, that such property would not be paying taxes on its actual cash value, while personal property, which is required to be assessed annually for its actual cash value, would be discriminated against, or there would be a discrimination in its favor, either result being equally repugnant to the organic law.

It must be conceded that in the adoption of methods to ascertain the fact of proper valuation for assessment, to arrive at the fair cash value, the Legislature is left a free hand, as it should be. Bearing in mind always that uniformity of rate and result alike are aimed at, as well as that equality, however desirable, is unattainable, it must be allowed that, when the Legislature classifies property for tax assessment, by putting real property into one class, personal property into another, and corporate property having a franchise attached into yet another, it is exercising a necessary function, in a reasonable manner. It can not be presumed that any invidious distinction was intended. The classification was natural. The object is, it may be justly assumed, to arrive at the fair cash value of the property to be taxed, in the simplest and surest way. When property is to be taxed for the year 1904, say, the assessment is made in 1903. Upon most property, but not all, it was made as of September 15, 1903. Obviously the valuation of some classes of property upon that date may have been less than the average value for the year, or may have been more. Nor is it necessarily a fact that all property had equivalently the same value on that day to its average value for the year. Much less can it be said that banks which are assessed as of December 31st, and railroads which are assessed as of July 1st, and distilled spirits which are assessed as of September 15th, are treated exactly alike, for there may be a wide difference between the values of these several properties on the several dates named. For example,

a bank's stock is apt to be worth more on December
31st, just before a dividend is declared, than it was
on September 15th or July 1st previous.   Some arbi-
trary date of valuation must be selected by the Legis-
lature—not that it is expected thereby to realize exact
justice in the matter, but to approximately do so.
The different classifications of property, for purposes
of assessment as has been done by the Legislature, is
not unreasonable in fixing the different dates, or in
providing different means, of ascertaining the values
of properties to be assessed.   There are apparent
good reasons for each different method and date of
assessment above stated.   But whether there were
or not, it must be conclusively presumed that there
were, as the matter is one belonging exclusively to the
legislative discretion.

As to city real estate, the permanency of the thing,
its chief value being its availability for building lots,
and the income derivable from such use, it may be as
fair to say that the actual fair cash value of the land,
estimated at what it would bring at a voluntary sale,
would not fluctuate materially in four years.   As a
practical matter it must be assumed by the assessing
authority that some date during the period for which
the assessment was made will justly represent an
average of the whole period.   Usually that period
is one year.   But it might be less, and unless pro-
hibited by the Constitution might be greater.   But,
whatever it is, it is undeniable that the date adopted
may not at all fairly represent in fact the average of
the period, and it may in fact have then much less
than its fair cash value on other days during that
period.   Still, the assessment would not be affected
by that fact, even though other species of property
suffered indirectly thereby.   For, after all, some date
must be selected as the one upon which the valuation
is to be made, and its selection must necessarily be
left to the wisdom and discretion of the legislative

branch of the government. If there is nothing in the Constitution making it necessary to assess annually, then the discretion of when and how often valuations should be made for purposes of assessment are matters likewise within the legislative discretion alone. Unless the court could say as a matter of law, or as a matter of fact of such common knowledge that the court will take judicial notice of it, that the values of town lots in general, irrespective of improvements made upon them, do always fluctuate materially within four years, then it could not be said that the Legislature has authorized a system of assessment which inherently works a violation of the uniform taxation clause of the Constitution. If, on the other hand, a quadrennial valuation of such property, considering its nature, is as apt to produce approximate equality of the burden of taxation as if it were valued annually when other property is, then there can be nothing in the mere matter of the time of valuation or assessment which can be said to infringe the constitutional requirement. As Judge Cooley put it (Cooley on Taxation, 165): "The Legislature must decide when and how and for what public purposes a tax shall be levied, and must select the subjects of taxation. All this is legislative, and the legislative conclusion in the premises must be accepted as proper and final." It was said by Chief Justice Bigelow, in Commonwealth v. Savings Bank, 5 Allen (Mass.) 428: "Under any system of taxation, however wisely and carefully framed, a disproportionate share of the public burdens will be thrown on certain kinds of property, because they are visible and tangible, while others are of a nature to elude vigilance. It is only where statutes are passed which impose taxes on false and unjust principles, or operate to produce gross inequality, so that they cannot be deemed in any just sense proportional in their effect on those who are to bear the public charges, that courts can interpose and

arrest the course of legislation by declaring such enactments void."

Real property, being fixed, visible, and having a market value dependent upon its adaptability for particular uses, cannot escape being taxed. It cannot well be overlooked. That which affects its value is plainly to be seen. It is not generally the subject of radical or violent fluctuations in value. On the other hand, personal property is here to-day, gone to-morrow. Much of it is consumed in its use. Its changeable nature (i. e. of most of it) involves corresponding changes in its value. By far the most of it cannot be distinguished by earmark. Every reason exists for annual assessments of such property, if its approximate, true value is to be used as a basis of assessment, or if much of it is to be assessed at all. In the adoption of ways to exact a uniform rate of tax from property within the jurisdiction levying the tax, the Legislature may well regulate the matter by adopting different methods for different classes of property, as may be best suited for the nature of the respective classes. And, in doing so, it is not a vice in legislation to pursue that course with respect to real property that tends the least to disturb the most perfect enjoyment of it by its owner, as by the certainty of the tax charge against it is in a measure done. Nothing in either of the sections of the Constitution which are quoted above requires annual assessments to be made. At least, it contains nothing requiring annual valuations to be made, or that requires the assessment to be based upon a valuation made when the assessment is. So far as anything is there said, the Legislature might authorize either more or less frequent assessments than yearly. The expression "all property shall be assessed for taxation at its fair cash value" means that it shall be so assessed as of the date when it is required to be assessed. We have seen that assessments are made

a year in advance of the collection of the tax. It is, of course, the collection of the tax that is the burden upon the property holder. Now if after the property is assessed, but by the time the tax is due, one class of property appreciates materially, while another depreciates materially in value, it would afford no ground for redress by the owner of the latter, although he could truly say that the tax being collected from him was not uniform, in a sense, with the tax collected from the owner of the other class. No more would it be an invidious discrimination in the systems, if in their application one class was made, in some exceptional instance, to bear more than its fair share of the burden. As was said by Chief Justice Gibson, in Kirby v. Shaw, 19 Pa. 258: "It is illogical to argue from an extreme case, or from an abuse of a power to a negation of it. Every authority, however indispensable, may be abused, and, if it might not, it would be powerless for good."

In nearly all of the states, the principle of taxation is that it shall be uniform upon all subjects of taxation, whether the principle be expressed in the Constitution in so many words, or gathered from its spirit. Yet in a number of the states it is allowed that assessments of real property may be made at longer intervals than a year, although other classes of property are assessed annually. The following are among the states which have or allow this system: South Carolina provides for uniform taxation. Article 9, § 1, Const. 1868; article 10, § 1, Const. 1895. Personal property is assessed annually, as is real estate, sold or transferred, but real estate generally is assessed every four years. Sections 271, 272, Code Laws. Arkansas provides for uniform taxation. Article 16, § 5, Const. Personal property is assessed as of between February and April of each year, while railroads are assessed every second year. Sections 5622-5625, 5649, Mansf. Dig.; Kirby's Dig.

§§ 6912-6915, 6941. Wisconsin provides for uniform taxation. Article 8, § 1, Const. Personal property is assessed as of May, whilst real estate is assessed at any time from May 1st, until the sitting of the board of reviewers in June. Sanborn & B. Ann. St. § 1033. The Constitution of Ohio (Article 12, § 2) likewise provides for uniform taxation. Personal property is assessed annually as of April. Section 2736, Rev. St. 1906. Transient traders may be assessed at any time. Section 2741. Corporations are assessed annually in May (section 2744), while real estate is assessed every 10 years with annual corrections of valuation in case of new, or destruction of old, structures. Sections 2786-2798, 2801, Rev. St. Ohio 1906. In Kelsey v. Nevada, 18 Cal. 629, it appears that the Legislature had authorized a municipality to levy a tax based upon an assessment of a previous year. The court said: "There is no constitutional requirement for annual assessments. If the Legislature choose, we do not see why property should not be taxed for several years at a given rate shown by a particular estimate or valuation. This assessment is but a mode of reaching the value, etc., and taxes can never be apportioned with exact uniformity, or exact justice." This case was followed and the above quotation approved in Cross v. Milwaukee, 19 Wis. 535. In Wingate v. Ketner, 8 Wash. 94, 35 Pac. 591, the city of Tacoma levied a tax, under legislative authority, for the year 1894, based upon the county tax roll for 1893. The court held that there was no constitutional or other reason why it could not be legally done. These cases all go, it is true, to the proposition that the whole tax might be levied upon such previous assessment, in which case, of course, there could be no discrimination between classes of property subject to the tax, as they would all necessarily fare alike. But they are cited as showing the trend of judicial thought that the

Legislature, unless compelled to do so by a constitutional provision, was not required to provide for annual assessments or valuations, but might base the levy on valid assessments of the years just previous.

Section 171 of the Kentucky Constitution requires that there shall be an annual tax. This by its terms refers to the State tax. Section 181 of the Constitution relates to municipal taxes, and, so far as it is in point in this case, reads: "The General Assembly shall not impose taxes for the purposes of any county, city, town, or other municipal corporation, but may by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes." Although it should be considered that the Constitution provides for an annual tax as to municipalities also, it would mean no more than that the tax should be levied and collected annually. Municipalities may become bound by contract, under express authority of the Constitution and statutes, for certain public purposes, beyond the possible revenues of the year, and are allowed to issue bonds evincing the debt. This debt they are required by the Constitution to provide for the payment of by levying a sufficient tax. Nevertheless, the tax is collectible annually only, although its duration may be for a number of years. The whole matter here depends on whether there is a discrimination between real and personal property, necessarily worked by the operation of section 3174, Ky. St. 1903. As the Legislature is authorized, as we have seen, to select its means and times of making assessments, and as it may therefore employ different agencies and different times for assessing and collecting taxes, even for the same year, from holders of different classes of property (as was expressly held in Commonwealth v. Taylor, 101 Ky. 325, 41 S. W. 11), the matter is cut down to a consideration of whether it necessarily follows that a valuation of town lots made in one

Worten v. City of Paducah.

year is not a true valuation of the same lots for
the next three succeeding years.  The only consti-
tutional limitation put on the matter of assessments
is that they shall be the fair cash value of the prop-
erty assessed, estimated at the price it would bring at
a fair voluntary sale.  The particular method of as-
certaining that value is a matter of detail, necessarily
to be worked out under general laws under legisla-
tive authority.  It must be determined by somebody
whose judgment will be final, and at some time arbi-
trarily fixed.  We have seen, as we think, that the
selection of these means is entirely within the legis-
lative control.  For a tax to be collected for the fis-
cal year 1904 it seems to us that it is as competent
to select the 15th of September, 1902, as the 15th of
September, 1903, as a fair date to which inquiry will
be directed for the state of the market of such prop-
erties.  Some certain date must be fixed upon, from
which it will be assumed that the state of the mar-
ket then found to exist, with respect to the particular
property, will fairly represent an average of the pe-
riod to which the Legislature has made it relate. There
does not appear any good reason why a cash market
value as of one date, for unimproved town lots, may
not, for purposes of general taxation, be assumed
to be the correct value, the fair cash value, for the
same property, for every other day in that fiscal
year, or in a short series of years, of which that
fiscal year is one. After all, it is only an approxima-
tion.  It is a matter of opinion.  It is not susceptible
of exact demonstration.  Perhaps another official or
board would have a different opinion about the value
on the same date.  It is a matter, then, of expediency
as to how the fair cash value on a certain day is to
be ascertained.  It is just as expedient, and as apt
to be correct, when once adopted for a period of four
years, as for a period of one year.  Levi  v.
Louisville,  97  Ky.  394,  16  Ky. L. R.  872, 30 S.

W. 973, 28 L. R. A. 480, is materially different from
this case. There the city of Louisville attempted to
substitute a system of license tax upon certain
property for an ad valorem tax required by the Con-
stitution. It was held that that could not be done. In
the recent case of Schuster & Co. v. City of Louisville,
89 S. W. 689, 28 Ky. Law Rep. 588, the question was
whether, under an amendment to the Constitution
allowing license taxes to be imposed by cities, in lieu
of an ad valorem tax, it was permissible to so impose
it on one class of property, and not on all, that glaring
inequality and lack of uniformity would result. We
held that the city had not that power, that taxes must
be uniform whatever the system.

We conclude that the act of the assessor in revalu-
ing the real estate in Paducah in 1903 was without
legal authority; that the valuation of 1902, as fixed by
the final action of the board of equalization, was the
basis of assessment for 1904, subject to changes for
improvements of $100, or more, put up or destroyed,
and to changes of ownership. The tax should be col-
lected on that basis alone. The chancellor can, under
the principle announced in Levi v. Louisville, supra,
cause such steps to be taken as will conform the
assessment to the law, and then require appellant to
pay the sum found due by him upon that assessment.

Judgment reversed, and cause remanded for pro-
ceedings consistent herewith.