## LA POINTE v. UNITED STATES.

### No. 9023.

Circuit Court of Appeals, Sixth Circuit.

May 7, 1942.

Raymond A. Fox, of Detroit, Mich., for appellant.

A. A. Armstrong, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Helen R. Carloss and John J. Pringle, Jr., Sp. Asst. to Atty. Gen., and John C. Lehr and Peter P. Gilbert, both of Detroit, Mich., on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

The appellant sued the Commissioner of Internal Revenue to recover an alleged overpayment of income taxes for the year 1936, the deficiency leading to the assessment and payment resulting from the disallowance by the Commissioner of a deduction by the taxpayer for a loss claimed to have been suffered upon the purchase and sale of corporate stock in the tax year, and constituting a capital loss governed by §§ 23 and 117(a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, pages 827, 873. The case was tried to the court without a jury and resulted in a judgment for the government, from which the taxpayer appeals.

Prior to February 6, 1936, the taxpayer had been the President and General Manager of the American Broach and Machine Company, in full charge of its policies, and jointly with his wife, the owner of 175 shares of its stock. In addition, he held 38 shares in trust for each of his three children, the remaining 8 shares of outstanding stock being owned by David A. DeLong. In the latter part of 1935 the taxpayer negotiated an agreement with the Sundstrand Machine and Tool Company, whereby that company was to acquire all of the outstanding stock of the American Broach and Machine Company by issuing therefor 29,145 shares of its own stock, the transaction to include the employment of the taxpayer, the leasing of property belonging to him, and the entering into certain license agreements with him. The Sundstrand Company was interested only if it could acquire all of the Broach Company stock. Accordingly, the appellant negotiated with DeLong for his 8 shares, offering him $10,000, which DeLong refused. In January, 1936, he arrived at an agreement with DeLong whereby he agreed to purchase DeLong's shares in exchange for 782 shares of the Sundstrand Company stock, worth $7,820, and the payment to DeLong of an additional $14,000 in cash. On February 3, 1936, DeLong executed a power of attorney appointing the taxpayer to represent him in the exchange of his shares for Sundstrand stock, and on February 6 Sundstrand acquired all of the outstanding stock of the Broach Company, issued therefor 29,145 shares of its own stock, and delivered them to the taxpayer who, on the same day, delivered 782 shares and a check for $14,000, to DeLong. Immediately thereafter the taxpayer sold 25,945 shares of Sundstrand

stock to a brokerage firm in Chicago, for $10 per share.

In his income tax return for 1936 the taxpayer claimed a capital loss of $14,000 resulting from the sale of the DeLong shares on February 6, for $7,820, and set forth that the shares had been purchased on February 3 for $21,820. The Commissioner disallowed the deduction as a capital loss but allowed the sum of $14,000 as an expense of the taxpayer in effectuating the sale of stock to Sundstrand. The distinction is important because if a capital loss, the $14,000 was deductible to its full extent as a loss resulting from the sale of capital assets held for not more than one year under § 117(a). If an expense, incurred in the sale of LaPointe's stock, the reduction in the taxpayer's net income would be but the percentage, applicable to the taxpayer's long-term gain upon the sale of capital assets.

The taxpayer's claim for refund was denied both as a capital loss suffered solely in 1936, and as a loss sustained during the tax year by the taxpayer in trade or business under § 23(e) (1) of the Revenue Act of 1936. The suit in the District Court followed, wherein it was concluded, as a matter of law, that the appellant was not entitled to the claimed deduction because he did not suffer a loss in the transaction with DeLong for the reason that he purchased stock from DeLong and did not sell him anything, and for the further reason that § 23(e) was not applicable because the taxpayer was not engaged in the trade or business of buying and selling stock, and the transaction with DeLong was not entered into for profit.

■ Taxation is an essentially practical phase of government activity. In imposing taxes and in determining their incidence, the taxing authority is concerned with realities and not with abstractions, with substance rather than form. This has been said so often that there is need neither for philosophical dissertation nor citation of authorities. In its practical aspect, there was neither a purchase by LaPointe of the DeLong shares, nor an intent to purchase them, whatever the mechanics for their transfer to Sundstrand may have been. Sundstrand would deal only if it could acquire all of the shares of the Broach Company. LaPointe wished to sell all of the shares owned by himself and family, for cash. He negotiated in advance, not only the sale of his own and his

family's stock to Sundstrand, but the sale of the Sundstrand stock to be acquired by him, to the Chicago brokers, at a price of $10 per share. In order that these negotiations might be successfully consummated, it was necessary that the DeLong shares should likewise be delivered to Sundstrand. But DeLong found himself in an advantageous position and capitalized upon it. He refused to transfer his stock unless he should receive therefor not only 782 shares of Sundstrand stock, worth $10 per share, but an additional $14,000 in cash. LaPointe was forced to capitulate or lose his eminently satisfactory deal with Sundstrand. He paid DeLong his price and this may be construed not otherwise than as LaPointe's expense in completing the transaction.

It is urged that the purchase and sale of DeLong's shares must be treated as a separate and distinct transaction, but it was not such, nor was it so construed either by DeLong or the appellant. The taxpayer's explanation to the Commissioner, in support of the deduction as a short-term capital loss, makes it clear that the $14,000 was paid to DeLong to induce him to sell his stock, and that the consideration he would receive therefor was dependent upon the final consummation of the sale of all of the stock to Sundstrand. There was no agreement to buy DeLong's shares at all events. The arrangement, as finally consummated, was not the transfer of the DeLong shares to LaPointe, but the giving of a power of attorney by DeLong to the taxpayer, which recited that it was for the purpose of selling and transferring the DeLong stock to Sundstrand, and for the transfer to DeLong of Sundstrand stock. The DeLong receipt not only acknowledged the delivery to him of $14,000 and 782 shares of Sundstrand stock, but ratified and confirmed all the lawful acts done under the power of attorney to make the exchange.

■ To say that LaPointe bought DeLong's stock on February 3, sold it three days later at a previously agreed price which entailed a loss of $14,000, and that this must be viewed as a transaction separate and distinct from the deal with Sundstrand, by the taxing authorities, is to exalt fiction into reality and to substitute form for substance. Responsible business men do not do things that way. Nor are we precluded by any finding of fact made by the District Judge to the effect that the taxpayer had agreed to purchase DeLong's

104

shares for cash and stock. Whatever may have been the court's evidentiary findings, the conclusion to be drawn as to the taxable nature of the transaction is one not of fact, but of law. Without committing ourselves to the legal conclusions specifically announced by the District Judge, we hold that the transaction must be viewed as a whole, that, so viewed, the money exacted from LaPointe by DeLong was not in the nature of a capital loss or a loss incurred in trade or business, but if deductible at all, then only as a necessary and unavoidable expense of the taxpayer in the sale of his shares to Sundstrand.

The judgment below is affirmed.