SEABOARD COMMERCIAL CORPORATION *v.*
STATE TAX COMMISSION OF MARYLAND

[No. 77, October Term, 1942.]

*Decided December 7, 1942.*

The cause was argued before SLOAN, JOHNSON, DELA-PLAINE, COLLINS, FORSYTHE, MARBURY, and GRASON, JJ.

*Carlyle Barton* and *Henry W. Schultheis,* with whom was *Robert S. Middleton* on the brief, for the appellant.

*Hall Hammond, Deputy Attorney General,* with whom was *William C. Walsh, Attorney General,* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

Appellant, a foreign finance corporation, appeals from an assessment of its capital stock made by the State Tax Commission and affirmed by Circuit Court No. 2 of Baltimore City. The appeal was taken under Section 194 (b) of Article 81, Code, 1939, which provides for such appeal from final action of the State Tax Commission in the exercise of its original jurisdiction in assessing any property.

The business of the appellant, as shown by the record, is divided into two classes or types. One is financing accounts receivable. None of this is done in Maryland. The other, which constitutes its entire operation in Maryland, is the purchase of motor vehicle installment paper. This paper is purchased from automobile dealers and not from automobile owners. The authority to assess the stock of such a corporation is found in Article 81, Section 16 (b), first enacted in 1939. Prior to that year, only stock in domestic finance corporations was assessed.

This was done under Section 16 of Article 81 as it was enacted by Chapter 226 of the Acts of 1929. That section is now Section 16 (a) of Article 81. It provides that all taxes assessed under it shall be subject to the provisions of paragraph (e) of Section 15 of Article 81. Paragraph (e) provides that shares of stock assessed under Section 15 (and by reference under Section 16 (a) shall be taxed to the owners and the taxes shall be debts of such owners, but may be collected from the corporation which shall be bound to pay the same for the account of its stockholders as if the corporation were the ultimate taxpayer, but it may obtain reimbursement from its respective stockholders. A tax levied under this section was construed in the case of *Fidelity and Guaranty Fire Corp. v. State Tax Commission,* 172 Md. 652, 193 A. 164, and it was there held that the tax levied on an assessment made under Section 16 (a) is a tax on the shareholders. The tax to be levied under Section 16 (b) is not a tax on the shareholders of foreign finance corporations, although the section provides that the stock of foreign finance corporations shall be assessed in the same way as that of domestic finance corporations. The statute sets out its purpose in the following words: "The intention being that a foreign finance corporation doing business in Maryland shall be assessed on its own account in the same amount as it would have been assessed, on account of its shareholders, if it were a domestic corporation." In this state of the law, the appellant claims that the method of assessment against the corporation is void, although it has been held good in making an assessment against shareholders.

In the consideration of this question, there are other applicable sections of the taxation laws. Section 6 of Article 81 which is placed in the Code under the heading of "What Shall Be Taxed and Where" provides in subsection (7) that there shall be subject to assessment and taxation for ordinary taxes "so much of the capital stock of foreign finance corporations doing business in Maryland as represents the business done in this State."

The method of assessing under 16 (b) is the same as that under 16 (a). 16 (a) refers back to Section 15, and this section gives the rule under which the Commission is to assess. It is first to ascertain the total aggregate value of the shares of stock of the corporation by considering three things: (1) The market value, if any, (2) the net earnings or income, (3) the net value of its assets. There is a further proviso that such aggregate value shall never be ascertained to be less than the fair aggregate value of all the property and assets of the corporation less the indebtedness or other liabilities, exclusive of the capital stock, and such aggregate value shall never be less than the total value of the real estate and tangible personal property owned by the corporation in the State.

After the total aggregate value of the shares has been ascertained, the appellee is directed to deduct (1) the assessed value of all real estate in this State assessed to the corporation, (2) the net assessed value of shares of stock in any national bank in the State, the taxes on which are required to be paid for the account of the holders, (3) the fair value of property exempt under Section 7 (26). This last deduction refers to vessels and aircraft. When these deductions have been made, the residue shall be divided by the number of shares outstanding and the quotient shall be the assessable value of each share, with appropriate provisons in case there are two or more classes of stock. A modification of the computation provided by Section 15 is made for domestic finance corporations in 16 (a) and for foreign finance corporations by reference in Section 16 (b). This modification is that the property and business outside of the State shall be excluded and in apportioning the value of the shares between the business within and without Maryland it shall be presumed in the absence of clear evidence to the contrary that the value of the property and business within Maryland bears to the value of the total business and property the same ratio which the gross receipts or earnings in Maryland (exclusive of in-

come from permanent investments) bears to the total gross receipts or earnings (exclusive of income from permanent investments).

The point is made on behalf of the appellant that in arriving at the net value of the assets, all assets, whether tax exempt or not, must be considered, and that when they are considered, the tax is laid on assets of a corporation which the State may not be permitted to tax, such as tax exempt securities held by it. In making this contention, the appellant stresses the difference between a tax on the corporation and a tax on the stockholders. The theory necessarily excludes the contention of the appellee that the tax is not on the property of the corporation, but is a tax on the privilege of doing business in the State.

Under Section 7 (21) of Article 81, which is the exemption section, it is provided that there shall be exempt from taxation any property exempted from taxation by this State, by the Constitution of the United States, or by any Act of Congress passed pursuant to and in conformity with the Constitution of the United States. The Commission, in an appropriate case, is authorized by this provision to eliminate exempt securities from any taxable base on which a tax is laid. However, it does not appear in the record that the appellant owned any tax-exempt securities, and it was admitted in the argument that it did not. The appellant, therefore, is not in a position to question the constitutionality of the statutes involved for this reason, because no question of exempt securities affects it. Nor has the court any power to pass upon a question which is not involved in the case it is considering. *State v. Insley,* 64 Md. 28, 20 A. 1031; *State v. Case,* 132 Md. 269, 103 A. 569; *Brown v. State,* 177 Md. 321, 9 A. 2d 209; *Maryland Theatrical Corp. v. Brennan,* 180 Md. 377, 24 A. 2d 911.

Another point made as a ground for invalidating the taxing statute is that it imposes on foreign finance corporations which have built up a business in the State, a burden which is not imposed on similar domestic corpo-

rations. This, it is claimed, is a violation of the Fourteenth Amendment. The inequality is alleged, for one reason, under the Maryland income tax, dividends from stock of a foreign finance corporation are taxed to the Maryland shareholders, while those of domestic finance corporations are not. The statement of this contention would seem to be its answer. The income tax is laid against the income of the shareholders, and not against the corporation. The appellant, in connection with its argument on this point, claims that taxes paid by a corporation "on its own account" are in reality paid by its shareholders. If this point of view is adopted, any claim of double taxation must be made by Maryland stockholders of foreign finance corporations. Such question does not arise here.

Another point of discrimination is made, because a new burden is now placed upon a corporation, which has been here for over twenty-five years and has built up a substantial business. It is true that in some cases, this has been held to be a denial of the equal protection clause of the Federal Constitution, but only where the new burden is one not placed on domestic corporations. Thus, an Alabama statute was so held invalid where it imposed an additional franchise on foreign corporations, and no such tax was imposed on domestic corporations doing precisely similar business. *Southern Railway Co. v. Greene*, 216 U. S. 400, 54 *L. Ed.* 536. An Illinois net receipts tax was applied as a tax on personal property at 30 per cent. of the full value. Subsequently, this was construed by the State as a privilege tax, and foreign insurance companies had all their local net income taxed as a condition of their right to do business. Domestic corporations paid only a tax on their personal property assessed at 30 per cent. of its value. The Supreme Court said: "A State may impose a different rate of taxation upon a foreign corporation for the privilege of doing business within the State than it applies to its own corporations upon the franchise which the State grants them; but the decision in *Southern Railway Co. v. Greene*,

*supra,* shows that this power to change the tax imposed on a foreign corporation as a condition for the license of continuing business is not unlimited, and that any attempt in a renewal to vary the terms of the original license which, however indirectly, enforces a new condition upon the corporation and involves a deprivation of its Federal constitutional rights, cannot be effective." *Hanover Fire Insurance Co. v. Carr,* 272 U. S. 494, 47 S. Ct. 179, 185, 71 *L. Ed.* 372. See also *Sneed v. Shaffer Oil, etc., Co.,* 35 Fed 2d 21; *National Savings, etc., Association v. Gillis,* 35 F. 2d 386.

The case before us is one where the tax placed upon appellant is similar to one already in effect on stockholders of domestic corporations. The effort is not to place a new tax upon foreign finance companies, not collected from domestic finance companies. It is to place upon foreign corporations, a tax already collected from stockholders of those chartered in the State. It is true, as a result of the difference in jurisdiction, that the tax cannot be collected in the same way from foreign corporations as from domestic corporations. Nevertheless, complete exactitude is not required. The State may classify in accordance with circumstances "provided the discriminations made are based upon sound reasons of public policy, and are not arbitrary or hostile." *Wilkens Co. v. City of Baltimore,* 103 Md. 293, 314, 63 A. 562, 565; *Colgate v. Harvey,* 296 U. S. 404, 80 *L. Ed.* 299, 102, *A. L. R.* 54; *Madden v. Commonwealth of Kentucky,* 309 U. S. 83, 84 *L. Ed.* 590. If the tax is really on the stockholders, as the appellant claims in this part of its argument, then there is even less difference between it and the tax on the stockholders of domestic companies.

Another question raised by appellant is that the State Tax Commission did not correctly assess the stock of the appellant because it did not consider correctly the three factors set out in Section 15 of Article 81, these being, as we have already stated, the market value, the net earnings, and the net value of the assets.

By the terms of the original law creating the State Tax Commission, Chapter 841 of the Acts of 1914, it was provided that there should be an appeal to court on questions of law only from decisions of the State Tax Commission. That section was in force in 1928. It was held by this court to mean that as to questions of fact involved in tax appeals, the decision of the State Tax Commission was final. *Susquehanna Power Co. v. State Tax Commission,* 159 Md. 334, 151 A. 29. Since that time, a new and elaborate method is provided for such appeals as this under the Act of 1929, Chapter 226, the pertinent part of which is codified as Section 194 (b) of Article 81 of the Code. The applicable part of that section is as follows: "All such appeals shall be upon the record of proceedings before the State Tax Commission certified to the court by said Commission, including a statement of all facts considered by said Commission on which its finding was based. Either side may introduce additional testimony or other evidence in the Circuit Court. Such petition of appeal shall set forth concisely the particulars in which the action of the Commission is claimed to be unlawful, unreasonable or against the substantial weight of the evidence. If the Court finds such error it shall remand the case to the Commission for further proceedings in accordance with its opinion or order; otherwise, the action of the Commission shall be affirmed." This does not mean that the court is to make the assessment in case it finds error in the assessment made by the Tax Commission. Its function and duty is to examine the record sent in by the State Tax Commission and consider such testimony as may be produced, and, in the light of the testimony and record, to determine whether there was error. If it finds error, the case is to be remanded to the Commission for further proceedings in accordance with its findings.

The error claimed by the appellant is that it considers that the Commission disregarded two of the factors required to be considered by it, namely, market value and net earnings, and considered only book value. The record, however, does not disclose this to be the case. The

chairman of the State Tax Commisson in answer to a question by appellant's counsel at the hearing before the Commission, said that it appeared from the reports of the appellant that its capital was $2,015,050, that its surplus was $711,344, making a total of $2,726,394; that the net profit was $260,369.94; that the market price of the preferred stock ranged from $39.25 to 34.50, and of the common stock from 13.75 to 12.50; that there were issued 101,505 shares of common and 20,000 shares of preferred. From the figures reported to the Commission by the appellant, the Commission determined that 8.791 per cent. of its business was done in this State. The business done out of the State was found to be $2,486,704, which left a net appraisement of the business done in Maryland of $239,690. The Commission found that 10 per cent. of the net earnings applicable to Maryland was $228,904. It found that the market value of the stock was $181,067. It could have used either of those figures. The chairman of the Commission, however, said: "But of the three figures we thought and think this $239,690 is the correct one." In so holding the Commission evidently had in mind the direction of the statute, Section 16 (a), that "it shall be presumed in the absence of clear evidence to the contrary that the value of the property and business within Maryland bears to the value of the total business and property the same ratio which the gross receipts or earnings in Maryland * * * bears to the total gross receipts or earnings * * *."

We do not think it incumbent on the *nisi prius* court to investigate how far each factor required by the Legislature to be considered entered into the final determination of the assessment. It would clearly be error for the Commission not to consider all of these factors, but that does not mean that an average must be struck between them. The Commission is set up as a body of experts on taxation, and it is intended that its judgment in the absence of clear error should be final on the assessment it makes. It may in one case hold that a combination of all three factors should be used to reach a fair assessment. It may in one case give the market

value the chief weight. It may in another rely chiefly on the net earnings, and in another it may base its assessment on the net value of the assets. In each of the four suggested decisions, it may be entirely correct, although each is based upon a different point of view. That is the purpose of the statute, to enable a body of men, selected to investigate such matters, to determine in each case what a fair assessment is, that is, an assessment fair both to the public and to the corporation. Had the Legislature intended that the market value should be the test, it would have said so, and similarly, had it intended any of the others to be the sole test. It clearly did not so intend. Nor did it intend that the Commission should take the lowest figure the use of these several factors produced. That might not be fair to the public. Neither did it intend that it must take the highest. That might not be fair to the corporation. It left the decision to the body it set up for the purpose of making it, with only one guide, the presumption set out in Section 16 (a) already quoted. It appears in the case before us that the Commission did take into consideration all the factors required by it, did exercise its judgment in reaching the conclusion it did, and that while the appellant might prefer a different conclusion, the action of the Commission was not unlawful, unreasonable, or against the substantial weight of the evidence.

The appellant, in the court below, argued that all of its intangibles (evidences of debt from Maryland motorists) except a comparatively insignificant amount, were physically in New York, and therefore should not be considered as assets in this State. The debt is here, however, even if its evidence is elsewhere. *Wheeling Steel Corp. v. Fox*, 298 U. S. 193, 80 *L. Ed.* 1143. This question was not pressed in this court, and it does not seem to merit further discussion.

It results that the court below was correct in its ruling affirming the action of the State Tax Commission, and we affirm its action in so doing.

*Order affirmed, with costs.*