FLEISCHMANN *v.* LACY, Comptroller, et al.

[No. 36, October Term, 1948.]

*Decided December 9, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Albert J. Fleischmann,* with whom was *Harry O. Levin* on the brief, for the appellant.

*Richard W. Case, Assistant Attorney General,* with whom was *Hall Hammond, Attorney General,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Albert J. Fleischmann, taxpayer, appellant, from an order of the Baltimore City Court affirming the action of the State Tax Commission of Maryland in sustaining an assessment by the Comptroller of the Treasury of deficit assessments against the appellant in the amount of $242.55, with interest, for the calendar year 1942, and $229.50, with interest, for the calendar year 1943, for Maryland State income tax.

The appellant has been a practicing attorney in active practice of the law since 1910 and during the years 1942 and 1943 maintained a law office in Baltimore City under the name of Albert J. Fleischmann.

The First National Bank of Baltimore and the appellant, on July 21, 1930, entered into a business arrangement with Willard S. Karn, who then was an officer and employee of the May Oil Burner Corporation of Balti-

more, but a resident of New York City and in charge of the New York office of the May Oil Burner Corporation. Karn was the owner of stock in the May Oil Burner Corporation. On July 21, 1930, the stock was listed on the Baltimore Stock Exchange and sold as high as $42.00 per share. On that day Karn applied to the First National Bank of Baltimore for a loan of $25,630 and pledged as security for that loan 1,308 shares of May Oil Burner Corporation stock. The Bank, desiring additional security, proposed to the appellant that he guarantee Karn's loan and agreed to compensate him for this guarantee. Karn was charged six per cent interest on the loan. To compensate the appellant for his guarantee of Karn's note, the Bank paid him two per cent interest and retained four per cent. The loan was regularly reduced and interest payments were regularly made. During the calendar years of 1934, 1935, and part of 1936, payments were made to the Bank on a monthly basis. Immediately upon receipt of such payments the Bank remitted to the appellant his proportionate share of the interest.

In 1936 Karn had severed his connection with the May Oil Burner Corporation and accepted another position. Later, for some periods, Karn was without employment and payments became irregular. Karn made the last payment to the Bank on October 2, 1940, at which time he paid $150 on the loan. The Bank, after that date, being unable to get additional payments from Karn, called on Fleischmann, the appellant, to make good his agreement of guarantee. The appellant then, on April 22, 1941, gave the Bank his note for the balance due on the Karn loan. During the calendar year 1942 the appellant paid the First National Bank $7,000 in part payment of his undertaking as guarantor of the Karn loan. In 1943 he paid the Bank $8,000 in additional discharge of this liability.

It is not disputed in this case that the appellant was not and is not able to recover from Karn these amounts paid the First National Bank on his guarantee. It is admitted that the appellant's share, two per cent, of the

interest paid by Karn to the First National Bank was paid to the appellant and he reported the receipts of these amounts in his Maryland State income tax return. Appellant claims that he has been engaged in three guarantee transactions such as the one hereinbefore recited.

The question for our decision is whether these payments of $7,000 and $8,000 made by the appellant to the First National Bank of Baltimore under his guarantee of the Karn loan are deductible under the provisions of the Maryland State Income Tax Law, Code 1939, Article 81, Section 224(d). This Section provides, among other deductions which shall be allowed: "Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business the income from which is subject to taxation under this subtitle." It is admitted that the losses (here in question) were "sustained during the taxable year, and not compensated for by insurance or otherwise." It is also admitted that "the income from which (trade or business if any) is subject to taxation under this sub-title."

The question is therefore narrowed as to whether the losses of $7,000 and $8,000 sustained during the taxable years of 1942 and 1943 were incurred in appellant's "trade or business." For a proper decision of this question we must decide (1) whether legally the words "trade or business" within the meaning of section 224(d), *supra,* mean "trade or business in which the taxpayer is engaged" and, if so, (2) whether there was substantial evidence to support the finding of the State Tax Commission that the appellant, the taxpayer here, was not engaged in the trade or business of guaranteeing loans.

Code, Article 81, Section 244, provides in part that the Comptroller in administering the Maryland State income tax law "shall apply as far as practicable the administrative and judicial interpretations of the Federal income tax law".

Article 81, Section 247, providing for appeals from the Maryland State Tax Commission, provides in part: "The

determination by the State Tax Commission shall be *prima facie* evidence of the amount of tax due."

The counterpart of Maryland Code, Section 224(d), of Article 81, *supra,* in the Federal income tax law is codified as Internal Revenue Code, Sec. 23(e)(1), 26 U. S. C. A. Sec. 23(e)(1). This section, covering losses which are deductible, provides in part as follows: "In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—(1) if incurred in trade or business; * * *." It further provides in part: "(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *." There is no provision in the Maryland Income Tax law similar to this provision (2), *supra,* in the Federal law.

The only section in the Maryland law relating to losses other than those by casualty, Art. 81, Section 224(e), is Article 81, Section 224(d), *supra,* here for interpretation, the counterpart of which is Internal Revenue Code, Sec. 23(e)(1), *supra.*

The Comptroller, in the instant case, contends that for a loss to be deductible under Section 224(d), *supra,* the loss must be sustained in a trade or business in which the taxpayer is engaged, that the taxpayer here is not engaged in the business of guaranteeing loans but is engaged in the legal profession, and therefore the losses here in question are not deductible.

Internal Revenue Code, Sec. 23(e)(1), being the counterpart of Maryland Code, Section 224(d), *supra,* we must "apply as far as practicable the administrative and judicial interpretations of the Federal income tax law" as applied to Internal Revenue Code, Sec. 23(e)(1), *supra,* to determine (1) whether the words "trade or business" in Maryland Code, Article 81, Section 224(d), *supra,* are to be interpreted to mean "a trade or business in which the taxpayer is engaged."

(1) Section II, Sub-division B. of the Act of October 3, 1913, 38 Stat. 167, provided in part that in computing net income for purposes of normal tax there should be

allowed as a deduction: "* * * fourth, losses actually sustained during the year, incurred in trade or arising from fires, storms, or shipwreck, and not compensated for by insurance or otherwise."

In the case of *Mente v. Eisner*, 2 Cir., 266 F. 161, 162, 11 A. L. R. 496, 1920, certiorari denied 254 U. S. 635, 41 S. Ct. 8, 65 L. E. 449, the taxpayer, Mente, claimed a loss under the section just hereinbefore quoted. Mente was a member of a firm engaged in the business of manufacturing jute bags and bagging, cotton bags and materials for covering cotton bales. For some three years he had been buying and selling cotton on the Cotton Exchange for his individual account, in no way connected with the business of the firm. He deducted from his gross income in each year losses sustained in the year resulting from these transactions as "losses incurred in trade." This deduction was denied by the Internal Revenue collector and on appeal the Circuit Court of Appeals said in that case: "We think that the language 'losses incurred in trade' are [is] correctly construed by the the Treasury of deficient assessments against the appel-Treasury Department *as meaning in the actual business of the taxpayer, as distinguished from isolated transactions*. If it had been intended to permit all losses to be deducted, it would have been easy to say so. Some effect must be given to the words 'in trade'." (Italics supplied here.)

The case of *Schwinn v. Commissioner of Internal Revenue*, 1928, 9 B. T. A. 1304, involved not the construction of Section 23(e) (1), *supra*, but a construction of the phrase in the statute, "or property held by the taxpayer primarily for sale in the course of his trade or business". The petitioner purchased 2,300 shares of stock of the Anaconda Copper Company in December, 1919, and sold them in June, 1924, at a loss of $73,472. The petitioner claimed that this stock was held by him primarily for sale in the course of his trade or business. The Board, in that case, said, 9 B. T. A. at page 1308: "When the expression 'trade or business' is used in the statute in connection with

losses it would seem to refer to a regular occupation or calling of the taxpayer, for the purpose of livelihood or profit. This is one of the accepted definitions of the term 'business' and is probably its most usual legal sense. *Flint v. Stone Tracy Co.*, 220 U. S. 107, 171, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; *Hewin v. Atlanta*, 1905, 121 Ga. 723, 49 S. E. 765, 768, 67 L. R. A. 795, 2 Ann. Cas. 296; *Easterbrook v. Hebrew Ladies' Orphan Society*, 1912, 85 Conn. 289, 82 A. 561, 563, 41 L. R. A., N. S., 615; *Allen v. Commonwealth*, 1905, 188 Mass. 59, 74 N. E. 287, 288, 69 L. R. A. 599. As to a similar conception of the word 'trade', see *May v. Sloan* 1879, 101 U. S. 231, 237, 25 L. Ed. 797; *In re Charles Town Light & Power Co.*, D. C. 1910, 183 F. 160, 163; *United States v. Douglas*, 8 Cir., 1911, 190 F. 482, 484, 36 L. R. A., N. S. 1075." See also *Howard v. Commissioner of Internal Revenue*, 1930, 20 B. T. A. 207.

The case of *Stuart v. Commissioner of Internal Revenue*, 1935, 32 B. T. A. 574, involved an interpretation of Section 23(e)(1), *supra*. The Board in that case said, 32 B. T. A. at page 580: "* * * the term 'business' means an established business, and we think that the term 'trade or business' used in section 23(e)(1) of the Revenue Act of 1928 likewise refers to an 'established' trade or business; otherwise, there would be no reason for section 23(e)(2). Where a taxpayer seeks to deduct from income an amount claimed as a loss incurred in trade or business it must be shown that such loss was sustained in the actual business of the taxpayer as distinguished from isolated personal transactions." One of the cases relied on was *Mente v. Eisner, supra*.

In *United States v. Wooten*, 5 Cir., 1942, 132 F. 2d 400, 402, the taxpayer devoted his time to real estate, rentals and investments in stock of which he had personal knowledge, and which was purchased purely as investment from private persons and not from a stock exchange. The Court there held that purchases of stock in four corporations, which stock became worthless would not constitute "carrying on a business" within the provision of Revenue

Act 1932, Section 23 (e) (1) permitting deduction of losses sustained in the operation of a trade or business.

In the case of *Hogan, Petitioner, v. Commissioner of Internal Revenue,* 1936, 35 B. T. A. 26, the petitioner was the organizer and also a large stock holder in Hogan Finance & Mortgage Company. In 1925 a salesman brought to him as a prospective purchaser of stock in that company a nurse who was willing to invest her life savings in that stock if the petitioner would guarantee her against loss. The company was then in good condition and because of "bigness of heart or sucker play" the petitioner gave her a written guarantee against loss. In 1930 the company became financially distressed, the stock had no market value, and the petitioner made good the nurse's loss. The Court in that case said, 35 B. T. A. at page 28: "There is no evidence to show that this payment was made either in the course of his trade or business or in a transaction entered into for profit. He was not selling the shares, and what his trade or business was is not shown. Apparently he acted voluntarily and gratuitously."

In *La Pointe v. United States,* 6 Cir., 1942, 128 F. 2d 102, the taxpayer received an advantageous offer to sell his corporate stock and that of his family. The offer, however, was conditioned on his obtaining for the buyer all stock in the corporation. The taxpayer sustained a loss of $14,000 in obtaining shares owned by a third party. The Court there held that the money lost by the taxpayer to the third party was not deductible as a loss incurred in trade or business under Revenue Act of 1936, Section 23 (e) (1), and that it was also not deductible for income tax purposes as a capital loss, and, if deductible at all, it was only deductible as a necessary expense in the sale of the taxpayer's shares to the buyer.

It was pointed out in *Wooten v. United States,* D. C. Tex. 1941, 41 F. Supp. 496, 497, that the expression "trade or business" as used in provisions of Revenue Act of 1932 relating to deduction from gross income of losses incurred in carrying on a trade or business refers to a

regular occupation or calling of the taxpayer, for the purpose of livelihood or profit.

In *Goldberg v. Commissioner of Internal Revenue,* 1929, 59 App. D. C. 147, 36 F. 2d 551, it was held that a loss sustained in an individual transaction differing from taxpayer's regular real estate business was not deductible from income as loss occurring "in regular trade or business.

In *Hines v. Commissioner of Internal Revenue,* 7 Cir., 1932, 58 F. 2d 29, it was held that the indemnification of a contractor by the president of a lumber company against loss sustained in the erection of a government hospital was loss resulting from an isolated transaction and not from operating trade or business.

In *Snyder v. Commissioner of Internal Revenue,* 3 Cir., 1934, 73 F. 2d 5, the finding of the Board that the taxpayer was not regularly engaged in the purchase and sale of shares of stock as a business and hence not entitled for income tax purposes to deduct the losses thereby incurred, was held sustained by the evidence.

We must assume from the authorities hereinbefore cited that the administrative and judicial interpretations of Internal Revenue Code, Sec. 23 (e) (1), *supra,* require, for a loss to be deductible under that sub-section, that the loss must be sustained in a "trade or business" in which the taxpayer is engaged. Applying this interpretation to the same wording in the Maryland Code, Article 81, section 224 (d), *supra,* we must therefore conclude as a question of law that the words "trade or business" within the meaning of that sub-section mean trade or business in which the taxpayer is engaged.

(2) As above set forth, in this appeal "the determination by the State Tax Commission shall be *prima facie* evidence of the amount of tax due." Article 81, Section 247, *supra.* It is also provided in Article 81, Section 247, *supra,* that the taxpayer has the right to appeal from the assessment made on his income tax return" * * * from the finding of the State Tax Commission in the manner provided by law for appeals from said Commission in the

exercise of its appellate jurisdiction, and the provisions of Sections 194 et seq. of this Article are hereby made applicable in the enforcement of this sub-title."

Sub-section (a) of Section 194, of Article 81 of the Annotated Code of Maryland, provides for appeals from the State Tax Commission acting under its appellate jurisdiction. This sub-section specifically limits the right of appeal to "questions of law."

Therefore, in deciding question (2), *supra,* we are limited in our decision to the question whether there is substantial evidence in the record to justify the finding of the Commission that the appellant here was not engaged in the business of guaranteeing loans. *Oak Lawn Cemetery v. County Com'rs, Baltimore County,* 174 Md. 280, 198 A. 600, 115 A. L. R. 1478; *Wasena Housing Corp. v. Levay,* 188 Md. 383, 52 A. 2d 903, 908.

Without again reviewing the evidence, we cannot say that the Commission acted arbitrarily in finding that the appellant, who had been engaged in the active practice of law since 1910 and who, at the time of the losses here in question, maintained a law office under his own name, was not engaged in the business of guaranteeing loans when, according to all the evidence in the case, he had never guaranteed more than three loans. The order will therefore be affirmed.

*Order affirmed, with costs.*