STATE TAX COMMISSION *v.* CHESAPEAKE &
POTOMAC TELEPHONE CO. OF BALTIMORE CITY

[No. 162, October Term, 1948.]

*Decided May 19, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Hall Hammond, Attorney General,* and *Richard W. Case, Assistant Attorney General,* for the appellant.

*R. Dorsey Watkins* and *H. H. Walker Lewis* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by State Tax Commission of Maryland, appellant (the Commission), from a decree of the Circuit Court of Baltimore City that the assessment made by the Commission against the Chesapeake and Potomac Telephone Company of Baltimore City, appellee (the Telephone Company), for the year 1948 is invalid, and remanding the case to the Commission to redetermine the assessment.

The 1948 assessment of the operating property of the Telephone Company as made by the Commission was $67,588,525. Code, 1947 Supplement, Article 81, Section 13 (a), provides as follows:

"Operating property, except land, of railroads, other public utilities and contract carriers shall be valued and assessed as follows:

(a) The State Tax Commission shall determine in each case what operating property, located in this State, or partly within and partly without this State, shall comprise an operating unit. An operating unit shall include all railroads, other public utilities and contract carriers for which separate operating accounts are not maintained. If separate operating accounts are maintained, an operating unit shall not include more than one railroad, other public utility or contract carrier unless the Commission finds that the same are under the same or commonly controlled management, and that such inclusion is necessary to ascertain the value of some of or all the operating property thereof located in this State. *The Commission shall value each operating unit, as so determined, by considering its earning capacity and all other factors relevant to a determination of its full cash value.*" (Italics supplied.)

After the valuation has been made by the Commission under Section 13 (a), *supra,* by Section 15 (a), of Article 81, Code, 1947 Supplement, the Commission is to assess the shares of stock. This Section provides:

"In computing the assessable value of shares of stock in any national bank located in this State, or in any domestic corporation (other than finance corporations) having a capital stock divided into shares which are subject to assessment and taxation under this article, the State Tax Commission shall first ascertain the total aggregate value of the shares of capital stock of such corporation *by considering* (1) the market value, if any, of the shares of such stock, without reference to sales at abnormal prices, rendering market quotations not a fair index of actual value of the shares of stock as a whole; (2) *the net earnings or income of such corporation,* and (3) the net value of its assets; provided (a) that such aggregate value of the shares of capital stock shall never be ascertained to be less than the fair aggre-

gate value of all the property and assets of such corporation of whatsoever kind and wheresoever situate, less the indebtedness or other liabilities of such corporation, exclusive of the capital stock, but with a fair allowance for contingent liabilities, (b) that such aggregate value of the shares of the capital stock shall never be ascertained to be less than the total value of the real estate and tangible personal property owned by such corporation in this State, and (c) *that such aggregate value of the shares of the capital stock of a public service corporation shall never be ascertained to be less than the total value allocated under Section 13 to the operating property thereof, including operating land, located in this State, plus the value of its non-operating real estate and non-operating tangible personal property located in this State.*" (Italics supplied.)

The actual assessment here disputed was made by the Commission under Section 13 (a) of Article 81, *supra.* Section 15 (a) of Article 81, *supra,* sets out the means by which a part of the valuation of the Telephone Company's property is assigned to its shares. All the shares of the appellee are owned by the American Telephone and Telegraph Company and therefore there is no free market by which the market price of appellee's shares can be measured.

The appellant contends, and the chancellor found, that the assessment in this case under Section 13 (a) of Article 81, *supra,* was made in the following manner:

Earnings Factor

1. Net Operating Income:

| | | |
|---|---|---:|
| | Year 1947 | $ 2,191,635 |
| 2. | 1st 6 months | 572,137 |
| 3. | Last 6 months | 1,619,498 |
| 4. | Line 3 times 2 | 3,238,996 |
| 5. | Line 4 capitalized at 6% | 53,983,265 |

Plant Factor

6. Plant in Service (Account 100.1) December 31, 1947.............. 102,950,349

7. Property Held for Future Telephone Use (Account 100.3) December 31, 1947 ......................... 173,625

8. Total (6 plus 7)................... 103,123,974

9. Depreciation Reserve (Account 171) December 31, 1947.............. 29,936,788

10. Net Plant (8 minus 9) December 31, 1947 ......................... 73,187,186

11. Material and Supplies (Account 122) December 31, 1947.............. 2,407,951

12. Material and Supplies applicable to construction (50% of Line 11) December 31, 1947.............. 1,203,975

13. Material and Supplies applicable to operations (11 minus 12)........ 1,203,976

14. Line 10 plus line 13................ 74,391,162

Determination of Assessment

15. Earnings Factor Weighted 1........ $ 53,983,265

16. Plant Factor ($74,391,162) Weighted 2 ........................... 148,782,324

17. Total (15 plus 16)................. 202,765,589

18. Assessment (⅓ of line 17) per State Tax Commission work papers..... 67,588,530

19. Assessment per State Tax Commission Notice of Assessment........ 67,588,525

The chancellor however found that the Commission gave less weight to earnings and to earning capacity than the law required and in this regard it discriminated against the Telephone Company as compared with other utility companies "and that in the valuation of the property without regard to earnings it discriminates against the Telephone Company as compared with other taxpayers generally, and is therefore invalid." Hence the decree from which the appeal is taken.

The appellee contends that its earnings have varied substantially from year to year and have been trending downward while book value of the plant has been trending upward and in spite of the assessment made by the Commission, it has been kept at approximately 90% of depreciated book value by adjusting the weight given earnings. In other words, the appellee contends that the Commission makes the assessment at 90% of depreciated book value and then figures backwards in order to arrive at this assessment, giving enough weight to earnings to produce an assessment which is approximately 90% of depreciated book value. *Wells Fargo & Co. v. Johnson,* 8 Cir., 1914, 214 F. 180, L. R. A. 1916C, 522, affirmed 239 U. S. 234, 36 S. Ct. 62, 60 L. Ed. 243. Of course, the statute did not contemplate such a method and if such were proven in the case before us, which we do not think has been done, the assessment should be held invalid. *Cleveland C. C. & St. L. R. Co. v. Backus,* 154 U. S. 439, 14 S. Ct. 1122, 38 L. Ed. 1041; *Schley v. Montgomery Co.,* 106 Md. 407, 67 A. 250. To substantiate this argument, the appellee, in its well prepared brief, sets up figures to show that its earnings have varied from $3,001,242.00 in 1942 to $2,191,635 in 1948 and its percentage of plant increase has varied from 12.72% in 1942 over 1941, to as low as 1.71% in 1945 over 1944, to 13.73% in 1948 over 1947. The appellee contends in spite of this its assessment has been approximately 90% of depreciated book value during all of those years.

The appellee strenuously objects to the fact that in making the 1948 assessment the appellant calculated the

"earnings factor" by using the net operating income realized by the appellee in the last six months of 1947 and then doubling it, while in previous years this "earnings factor" has been predicated upon an average of the five past years earnings. On the other hand, the appellant offered testimony to show that it uses no set formula in making the assessment. The appellant contends that the reason why it used the last six months of 1947 was that in its judgment it felt that that method more nearly measured the present earning capacity of the property than the methods used in the past, and that past net operating income should be used as a measure only as long as that income properly measures the current earning capacity. The Commission offered testimony to show that during 1946 and 1947 the appellee increased the net worth of its plant by the addition of $25,-732,000 and during those years the property was not earning at full capacity. Also on account of a strike during 1947, which reduced the appellee's net income during the first six months, and the general rate increase awarded the appellee by the Public Service Commission in 1947, the full result was not felt during the whole year of 1947.

The pertinent part of Section 194 (b) of Article 81, Code, 1947 Supplement, providing for the appeal here, follows: "All such appeals shall be upon the record of proceedings before the State Tax Commission certified to the Court by said Commission, including a statement of all facts considered by said Commission on which its finding was based. Either side may introduce additional testimony or other evidence in the Circuit Court. Such petition of appeal shall set forth concisely the particulars in which the action of the Commission is claimed to be unlawful, unreasonable or against the substantial weight of the evidence. If the Court finds such error it shall remand the case to the Commission for further proceedings in accordance with its opinion or order; otherwise the action of the Commission shall be affirmed."

As pointed out in the case of *Seaboard Commercial Corportion v. State Tax Commission,* 181 Md. 234, at page 242, 29 A. 2d 294, the function of the Court on appeal is to consider the record sent in from the Commission and such testimony as may be produced and with the testimony before it and the record to determine whether there was error. The burden is therefore upon the appellee to show that the Commission committed clear error in making the assessment under the provision of Section 13 (a), *supra.* Compare *Fleischman v. Lacy,* 191 Md. 648, 62 A. 2d 561; *Elgin v. Capitol Greyhound Lines,* 192 Md. 303, 311, 64 A. 2d 284, 288. This Section distinctly provides that the Commission shall value each operating unit *"by considering its earning capacity and all other factors relevant to a determination of its full cash value."* The statute, of course, does not specify any set percentage. The appellee contends, and the chancellor found, as hereinbefore set forth, that the Commission did not properly consider the earnings and earning capacity of the appellee in arriving at the assessment. The primary question before us is therefore whether the Commission properly considered, as required by Section 13 (a), *supra,* the earning capacity of the Telephone Company in arriving at its assessment.

It has been stated many times by this Court that it is a cardinal rule of statutory construction that the intent of the Legislature is to be sought in the first instance in the words of the statute. Where the language is clear and free from doubt the Court has no power to evade it by forced and unreasonable construction or to pass upon the expediency of the statute. *Leonard v. Wiseman,* 31 Md. 201, 204; *Smith v. Higinbothom,* 187 Md. 115, 125, 48 A. 2d 754. The words "by considering" here are hardly susceptible of more than one interpretation such as to require a consideration of the legislative intent. *Brenner v. Brenner,* 127 Md. 189, 96 A. 287; *Powell v. State,* 179 Md. 399, 18 A. 2d 587; *Roach v. Jurchak,* 182 Md. 646, 35 A. 2d 817; *Smith v. Higinbothom, supra.*

The meaning of the word "considering" is plain. It is defined in Black's Law Dictionary as follows: "Deemed; determined; adjudged; reasonably regarded." *State v. District Court of Eighth Judicial Dist. in and for Cascade County,* 64 Mont. 181, 208 P. 952, 955; *Polsgrove v. Moss,* 154 Ky. 408, 157 S. W. 1133, 1135. * * *.

"Evidence may be said to have been 'considered' when it has been reviewed by a court to determine whether any probative force should be given it. *Taylor v. Gossett,* Tex. Civ. App., 269 S. W. 230, 233."

There is not doubt in this case that the appellant in considering the assessment doubled the net earnings of the appellee in the last six months of 1947 and gave a weight of 33⅓% to those earnings for 1947 in making the assessment. The case of *Seaboard Commercial Corporation v. State Tax Commission,* 181 Md. 234, 29 A. 2d 294, *supra,* is controlling on the primary question before us here. In that case the Seaboard Commercial Corporation contended that the Commission in making the assessment disregarded two of the factors now required by Article 81, Section 15 (a), *supra;* namely, market value and net earnings and considered only book value. In the case before us the appellee contends that the appellant did not give enough weight to net earnings. This Court said in that case 181 Md. at pages 243 and 244, 29 A. 2d at page 299, which is very pertinent here: "We do not think it incumbent on the *nisi prius* Court to investigate how far each factor required by the Legislature to be considered entered into the final determination of the assessment. It would clearly be error for the Commission not to consider all of these factors, but that does not mean that an average must be struck between them. The Commission is set up as a body of experts on taxation, and it is intended that its judgment in the absence of clear error should be final on the assessment it makes. It may in one case hold that a combination of all three factors should be used to reach a fair assessment. It may in one case give the market value the chief weight. It may

in another rely chiefly on the net earnings, and in another it may base its assessment on the net value of the assets. In each of the four suggested decisions, it may be entirely correct, although each is based upon a different point of view. That is the purpose of the statute, to enable a body of men, selected to investigate such matters, to determine in each case what a fair assessment is, that is, an assessment fair both to the public and to the corporation. Had the Legislature intended that the market value should be the test, it would have said so, and similarly, had it intended any of the others to be the sole test. It clearly did not so intend. Nor did it intend that the Commission should take the lowest figure the use of these several factors produced. That might not be fair to the public. Neither did it intend that it must take the highest. That might not be fair to the corporation. It left the decision to the body it set up for the purpose of making it, with only one guide, the presumption set out in Section 16 (a) already quoted." (Section 16 (a), [Code (1939), Art. 81], applying to domestic finance corporations, is not applicable here, but is comparable to Section 15 (a), *supra*.) "It appears in the case before us that the Commission did take into consideration all the factors required by it, did exercise its judgment in reaching the conclusion it did, and that while the appellant might prefer a different conclusion, the action of the Commission was not unlawful, unreasonable, or against the substantial weight of the evidence." In the instant case, as it is plain that the appellant gave some real consideration to net earnings, we cannot say that the assessment was unlawful, unreasonable, or against the substantial weight of the evidence. We cannot say that the reasons given by the Commission for its conclusions are arbitrary or irrational. We should not substitute our judgment for that of the Commission.

As hereinbefore set forth, the chancellor found, and the appellee contends, that the appellant discriminated against it as compared with other utility companies and

with other taxpayers generally and that such discrimination was unlawful and unconstitutional.

Appellee claims that this discrimination was intentional and systematic and violates the equal protection clause of the 14th Amendment of the Federal Constitution and Article 15 of the Declaration of Rights of Maryland. *Sioux City Bridge Co. v. Dakota County*, 260 U. S. 441, 445, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979; *Cumberland Coal Co. v. Board*, 1931, 284 U. S. 23, 52 S. Ct. 48, 76 L. Ed. 146. To substantiate its contention the appellee claims that if the appellant and two other companies in this State are treated on the same basis by using the net earnings figures which they reported to the Public Service Commission, capitalized at 6%, the ratios of their 1948 assessments to capitalized income follow: Potomac Edison Company, 77.70%; Consolidated Gas & Electric Company, 89.85%; Chesapeake & Potomac Telephone Company, 143.39%. The appellee also contends that during the years 1945, 1946, and 1947, domestic gas and electric utilities have on the average been assessed at 74% of their capitalized earnings while the Telephone Company has been assessed from at 109% to 125% and that this discrimination has been increasing, due to the failure of the Commission to give account to the downward trend in appellee's earnings. In seeking to prove unlawful discrimination against the Telephone Company as compared with property taxpayers generally, the only comparison offered is that of the assessment against banks and the O'Sullivan Building in Baltimore City. These do not seem comparable to the earning capacity of a public utility.

On the other hand, the appellant claims that the assessment against appellee is approximately 88% of its adjusted rate base while that against Potomac Edison is 88% of its rate base, against Consolidated, 103%, and against the Eastern Shore Public Service Corporation, 82%. The assessment made against the Telephone Company is 91% of its net book value while that against Potomac Edison is 91%, Consolidated 92%, and Eastern

Shore, 83%. The assessment made against the Telephone Company is 125% of its capitalized income, against Potomac Edison 100%, against Consolidated 103%, and against Eastern Shore 124%. As hereinbefore set forth, the appellant claims that the net worth of appellee's plant was materially increased during 1946 and 1947 which should be reflected in increased earning capacity and shows that the Public Service Commission granted appellee a general increase in rates during 1947, which would increase 1948 earnings. It does not appear to this Court that there is such discrimination as to make appellee's assessment unlawful. There is no evidence of bad faith in this case. The Commission may have made some error in judgment which will be corrected and reflected in assessments in later years. *Chesapeake & Potomac Telephone Co. v. State Tax Commission,* 158 Md. 512, 520, 148 A. 832. Earning capacity is a forecast of the future. The Court should not interfere unless the assessment is arbitrary, which we do not find in this case. Valuation of property for taxation is one of the oldest forms of administrative power and the courts should not interfere with the exercise of this administrative power unless it is unlawful, unreasonable, or against the substantial weight of the evidence. Perfect equality is unattainable. If assessments could be upset by comparison of a few widely different properties, on the basis of a selected few of the many elements or evidences of value, no assessment could stand. Furthermore, if other utilities have been underassessed, appellee's remedy lies not in attempting to be relieved of the assessment itself but in restraining the Commission from not properly assessing other utilities. It was said by this Court in the case of *Baltimore Steam Packet Co. v. Mayor & City Council of Baltimore,* 161 Md. 9, at page 22, 155 A. 158, at page 163: "Upon a full consideration of the contentions of the appellant, it would seem that its real complaint is that it is now taxed, while competitors are exempt, resulting in a pecuniary advantage to the competitors over it to the extent of the tax

which it is required to pay. If this be true, its remedy lies, not in attempting to be relieved of the tax itself, but in restraining the proper taxing officials from allowing the exemption to its competitors. Every taxpayer has a financial interest in seeing that all property in the state, properly the subject of taxation, should be taxed, because, by increasing the taxable basis, the rate necessary for the production of the expenses of the state and local governments will be reduced, and the individual's tax correspondingly lowered. Such a proceeding was approved by this court in *Schley v. Lee*, 106 Md. 390, 67 A. 252." *Board of County Commissioners of Anne Arundel County v. Buch*, 190 Md. 394, 399, 58 A. 2d 672, 675; *Atkinson v. Sapperstein*, 191 Md. 301, 308-309, 60 A. 2d 737, 739.

As we do not find the assessment in this case unlawful, unreasonable, or against the substantial weight of the evidence, or that clear error has been proven, the decree must be reversed and the petition dismissed.

*Decree reversed and action of Commission affirmed, with costs.*