## SEARS, ROEBUCK & COMPANY *v.* STATE TAX COMMISSION OF MARYLAND

[No. 28, September Term, 1957.]

*Decided November 22, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HAMMOND and PRESCOTT, JJ.

*Richard W. Case* and *Joseph Sherbow,* with whom were *Sherbow & Sherbow* and *Clark, Smith & Prendergast* on the brief, for the appellant.

*Theodore C. Waters, Jr., Assistant Attorney General,* with

whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Sears, Roebuck and Company, (Sears), appellant, from an assessment made by the State Tax Commission of Maryland, (Commission), appellee, on its stock in trade. Sears appealed to Circuit Court No. 2 of Baltimore City. From an order of that court affirming the assessment of the Commission, Sears appeals here.

The statutory provisions under consideration in this case are Code, 1951, Article 81:

"13. (a) Except as hereinafter provided, all property directed in this Article to be assessed, shall be assessed *at the full cash value thereof* on the date of finality. * * *" (Italics supplied).

"14. The stock in business of every person, firm or corporation engaged in any manufacturing or commercial business in this State shall be valued and assessed to the owner thereof on the date of finality at its fair average value for the twelve months preceding the date of finality, * * *. Provided, however, that for county taxation in Anne Arundel County and Frederick County, and for municipal taxation in the City of Frederick such stock in business shall be assessed at seventy-five per centum (75%) of such fair average value for the twelve months preceding the date of finality."

"230. The jurisdiction, supervision, powers and duties of the State Tax Commission herein created and established shall extend under this Article: * * *

"(7) To formulate, whenever the Commission shall deem it practicable, standards or units for the assessment of various kinds of property, and to issue instructions to local supervisors of assessments in

"regard thereto and to require the use thereof. To confer with County Commissioners and the Appeal Tax Court of Baltimore City and visit each county as often as necessary."

Sears owns and operates retail stores in Allegany, Anne Arundel, Cecil, Dorchester, Frederick, Montgomery, Washington and Wicomico Counties, and in Baltimore City. It calculates the cost of its merchandise for the purposes of Maryland tangible personal property taxes by means of the FIFO, (first in, first out), accounting method.

The facts which follow are contained in an agreed statement of Undisputed Facts, pursuant to Rule 828 g of Maryland Rules of Procedure. The Commission, by virtue of the authority conferred upon it by the General Assembly, is required to supervise the assessments of all property in the counties and cities of this State so that all taxable property shall be entered upon the assessment rolls and equalized between persons, firms and corporations. In Maryland real property is valued for assessment purposes by the Supervisors of Assessments of the counties and Baltimore City. The personal property of corporations, including stock in trade, is valued for assessment purposes by assessors who are members of the staff of the Commission. Both of these groups of assessors are subject to the control and supervision of the Commission.

As above stated, it is provided by Code, 1951, Article 81, Section 13 (a), that all property shall be assessed at its full cash value on the date of finality. The Supervisors in the various counties and in Baltimore City have been instructed by the Commission to assess all taxable property in this State at its full cash value. There is no statutory definition in Maryland of the term "full cash value". It is agreed that: "The administrative definition of the term 'full cash value' which has been adopted by the Commission with respect to real property, however, is an entirely different concept from the Commission's definition of that term as applied to stock in trade owned by corporations. With respect to real estate, the Commission has directed its assessors to deduct amounts

resulting from inflationary influences from the value of the properties to be assessed. This deduction reduces the value of real estate for tax purposes below its current value. No similar deduction is made in the case of assessment of stock in trade." In assessing inventories inflationary influences as such are not considered. Instead the assessment is at cost or market, whichever is lower. In the assessment of such inventories abnormalities, such as pilferage, are considered in arriving at cost or market. The level of the aforegoing assessments to current value is the direct result of the policies and practices of the Commission which by law is required to supervise all assessment of real property within this State. Various studies had been made as to the level of assessments to current values of real estate in the counties and in Baltimore City. These studies vary in scope and in method. However, they sustain the same factual conclusion that the ratios of assessments to current values of real estate in Maryland ranged from twenty-five per centum to sixty per centum at the time this case was heard by the Commission.

The business of the appellant is selling goods at retail, and to conduct such business it had a large stock of personal property in its inventory which was assessed for property taxes by the Commission at its current value, that is, cost or market, whichever was lower. The Commission, in assessing Sears' stock in trade, made no allowance for the impact of inflation, which it allowed in assessing real estate. As inflation increased the value of real estate, it likewise caused an increase in the value of Sears' inventories. The rise in the levels of department store inventory prices was similar to the rise in other composite price series. Inflation, which has increased both the values of real estate and stock in trade, has caused a substantial rise in Sears' inventory in Baltimore and in the counties. Since 1941 Sears' catalog shows an increase of eighty-four per centum in 1952; an increase of seventy-nine per centum in 1953; and an increase of forty-one per centum in 1954. The rise in cost of goods has been approximately in the same proportion.

Sears contends under Section 13 (a), *supra,* as the General Assembly has stated that all property should be assessed

at "full cash value" it has classified real and personal property alike for assessment purposes. Therefore the same economic yardstick should be used in making assessments against real and personal property as the statutes require the same standard of value.

The appellee contends that since Section 14, quoted above, requires inventories to be assessed at "fair average value", the method of assessment is so different from that prescribed for real estate, that differences in result do not constitute unlawful or unconstitutional discrimination between taxpayers of the same class. This Court, in the case of *May Stores v. State Tax Commission*, 213 Md. 570, 132 A. 2d 593, discussed Section 14. It was there stated that the sole question to be determined was whether the refusal of the Commissioners to accept the LIFO method of calculating the fair average value of the tangible personal property of the appellant for the twelve months preceding the date of finality was unlawful, unreasonable or against the substantial weight of the evidence. This Court there adopted the opinion of the Commissioners, which stated, among other things, the following: "Cost or market, whichever is lower, is a fair indication of the reasonable value of inventory provided that either the cost or the market value is established as of recent date." It is evident that the words "fair average" applied to inventories and stock in business, recognize the fact that the size of inventories fluctuate over the annual period and the value of the inventory should be based upon a representative amount and representative price for the inventory, not according to the amount of stock on hand on the date of finality, but on the fair average for the twelve months preceding the date of finality. Fair average means an average typical of the amount and price of goods acquired over the twelve month period.

Section 13 (a) prescribes a standard of assessment of property to be followed "except as hereinafter provided". That standard is "the full cash value thereof on the date of finality". Section 14, in dealing with stock in trade or inventory, does otherwise provide in one respect. This is to substitute (for the reasons just stated) an average value of inventory over a period of twelve months for what might be the value on

some single day—the date of finality. That, we think, is the only purpose of this formula and hence it does not call for any further departure from the basic requirement of "full cash value * * * on the date of finality" contained in Section 13 (a). We are strengthened in this view because there is, we think, no substantial difference in meaning between "fair value" and "full cash value". See *Burke v. Fidelity Trust Co.,* 202 Md. 178, 96 A. 2d 254.

Appellee contends that this Court and the courts of other states have recognized that natural and inherent differences between various classes of property necessitate different ways of ascertaining their value for assessment purposes, and have long held that the use of different methods of assessment does not in and of itself violate constitutional or statutory requirements of uniformity and equality in the assessment and taxation of property. It relies on *Baltimore City v. The State,* 105 Md. 1, 65 A. 369; *Seaboard Commercial Corp. v. State Tax Commission,* 181 Md. 234, 29 A. 2d 294; *State Tax Commission v. C. & P. Telephone Co.,* 193 Md. 222, 66 A. 2d 477; *State Tax Commission v. Brandt Cabinet Works,* 202 Md. 533, 97 A. 2d 290; *Household Finance Corp. v. State Tax Commission,* 212 Md. 80, 128 A. 2d 640; and *May Stores v. State Tax Commission, supra.* The appellee relies on the case of *Sears, Roebuck v. Inhabitants of City,* 150 Me. 181, 107 A. 2d 475. It is true that the Court there held that different methods might be used for arriving at the value of property, but it was there stated that there should be no favoritism or discrimination between real and personal property. To the same effect are the following cases relied on by the appellee. *McLendon v. City of LaGrange,* 107 Ga. 356, 33 S. E. 405; *People v. Pickard,* 377 Ill. 610, 37 N. E. 2d 330; *Worten v. City of Paducah,* 123 Ky. 44, 93 S. W. 617, decided in 1906. The case of *People v. Southwestern Bell Telephone Co.,* 377 Ill. 303, 36 N. E. 2d 362, relied on by the appellee, was based on a statute in Illinois which is not in effect in this State. In *Kentucky Finance Co. v. McCord* (Ky.), 290 S. W. 2d 481, decided in 1956, the decision turned on a 1915 amendment to a statute, not in effect here. The Commission, being a body of experts on taxation, *Seaboard*

*Commercial Corp. v. State Tax Commission, supra,* may use any proper method for assessing property. However, the result must be to arrive at the statutory requirement of "full cash value". Of course, the method used to arrive at the full cash value of real estate may be different from the method used to arrive at the full cash value of inventories. As was stated in *Rogan v. Commissioners of Calvert County,* 194 Md. 299, 312, 71 A. 2d 47, the duty of the County Commissioners to follow the Commission's instructions as to the method or plan of assessment does not include the power of the Commission to require or the duty of the County Commissioners to make any departure from the statutory requirement to assess all property to be assessed at the full cash value on the date of finality.

In *Bemis Bros. v. Claremont,* 98 N. H. 446, 102 A. 2d 512, the plaintiff claimed that its stock in trade, along with that of other taxpayers, was assessed at one hundred per centum of its fair market value for 1951, while real estate and other property taxed as such were assessed at eighty, fifty-five and sixty per centum of such value. The New Hampshire statute provided that property was to be appraised at "its full and true value in money". The Constitution of that State provided that all taxes on "estates" shall be proportionable and reasonable, which means equal and just. The Supreme Court of New Hampshire pointed out that real estate was not assessed at the fair market value but rather at eighty per centum thereof. Machinery was assessed at sixty per centum, buildings were assessed at fifty-five per centum, and stock in trade was assessed at its full market value. The Court there said: "We find no legal basis for assessing stock in trade at its full market value and real estate and other such property at varying percentages lower than its market value. * * * 'There is no foundation for the proposition that owners of one kind of property should pay more or less than their share of the common burden because of the character of their estate.' * * * We are of the opinion that the assessment as made was in violation of the constitutional requirements of proportionality and equality." See also *Anderson's Red & White Store v. Kootenai County,* 70 Idaho 260, 215 P. 2d 815; *Chastain's,*

*Inc. v. State Tax Commission,* 72 Idaho 344, 241 P. 2d 167; *Hutchins v. Howard,* 211 Ga. 830, 89 S. E. 2d 183; *Delaware, Lackawanna & Western R. R. Co. v. Neeld,* 23 N. J. 561, 130 A. 2d 6; *Switz v. Middletown Township,* 23 N. J. 580, 130 A. 2d 15; *Sears, Roebuck v. Inhabitants of City, supra.*

In the case of *Hillsborough Township v. Cromwell,* 326 U. S. 620, 90 L. Ed. 358, a discriminatory treatment in the assessment of taxes was claimed in the State of New Jersey. The Supreme Court of the United States, in an unanimous opinion, in which Mr. Justice Murphy and Mr. Justice Jackson took no part, said: "The equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. The right is the right to equal treatment. He may not complain if equality is achieved by increasing the same taxes of other members of the class to the level of his own. The constitutional requirement, however, is not satisfied if a State does not itself remove the discrimination, but imposes on him against whom the discrimination has been directed the burden of seeking an upward revision of the taxes of other members of the class. *Sioux City Bridge Co. v. Dakota County,* 260 U. S. 441, 445-447; *Iowa-Des Moines National Bank v. Bennett,* 284 U. S. 239, 247; *Cumberland Coal Co. v. Board of Revision,* 284 U. S. 23, 28-29."

The appellee also contends that the taxpayers' remedy is not in attempting to be relieved of the assessment itself but from restraining the Commission from not properly assessing other property. It relies on *Schley v. Lee,* 106 Md. 390, 67 A. 252, and *County Commissioners of Anne Arundel County v. Buch,* 190 Md. 394, 58 A. 2d 672, and *State Tax Commission v. Brandt Cabinet Works, supra.* Here, the appellant is not contending that any other assessment made under the direction of the Commission is too low. It is complaining that its assessment is too high. The discrimination here has been intentional and arbitrary. *Rogan v. Commissioners of Calvert County, supra.* The Supreme Court of the United States in *Hillsborough Township v. Cromwell, supra,* has ruled that the state itself must remove such discrimination.

560

We are of opinion that the order of the Commission should be reversed.

*Order reversed, with costs, and case remanded for further proceedings.*